*459
 
 Mr. Justice McLEAN
 

 delivered the opinion -of the court.
 

 The complainant filed his bill in the Circuit Court of the United States, in Michigan, stating that he is .the owner in fee-simple of certain lands lying in Genesee county, amounting to three thousand five hundred, and forty-nine and seventy-one'hundredths acres, and of the value of $7500. That, in 1836, he entered these lands, paid for them, and received from the land-oífice a final certificate. Patents were issued for them o'n the 12th of August, 1837.' That the delay in- issuing the patents was not at the instance of complainant. Before the emanation of the patents, the lands were assessed for taxation, and sold by the defendant for the taxes thus assessed. Two years are allowed the owner to redeem the land by the act of Michigan, on the payment of the tax, charges, and interest, at the rate of twenty per cent, per annum. When this bill was filed, the time of redemption had not expired. The bill prays, that the assessment and sale-may be declared illegal and void, and that the defendant may be enjoined from conveying the land, and other relief, &c.
 

 The case was •considered as on a demurrer to the bill, and on the argument, the opinion of the judges were opposed on the following points:—
 

 1. “Whether the statutes of the state of Michigan did, in fact, authorize the assessment and sale of the lands in question,, and whether said statutes were intended to direct the assessment for taxation of lands of the United States, before the patents for them had been executed by the officers of the Uniféd States.”
 

 . 2. “ Whether the lands in question were, before the date and execution of the patents for them, subject to taxation at all by the state of Michigan.”
 

 3. “ Whether if they were subject to taxanuu oy the state, before the execution of the patents for them, it was competent to assess, and tax, and sell them, as the absolute property-of the complainant, and at their full value, as if he owned them in fee.”
 

 4. “ Whether the remedy by bill in equity, and the relief sought, are proper.”
 

 The 1st section of the act of the 22d of April, 1833, of the territory of Michigan, provides, “ that the taxes hereafter to be-levied in this territory shall be assessed, levied, and paid in the manner hereinafter mentioned, upon a valuation of real and personal estate,” &c.
 

 By the 2d section the asse ors of the different districts, “ according to the best evidence in their power,” are required to. make out “ a list or schedule of all the taxable property in the .same,” .and bring the said lists or schedules together, and jointly value the property named in each, and set down in their assessment-rdll the value of Wildings in such township, owned or possessed by any person residing in such' -township,” &c. “ And the assessors shall ascer
 
 *460
 
 tain Avhat lands are situated in their townships, not owned by persons residing in such townships, and shall, in their ássessment-rollis, separate from the assessments made the estates of non-residents, and designate such land in the following mannerif the estate be a patent or traet.of land of the subdivision of which the assessors cannot obtain correct information, they shall enter the name of the patent or tract, if known by any particular name, without regarding who may be the owner thereof; and if such tract be not known or designated by any.particular name, they shall state by what other land the same is bounded,' and shall set-dowh the quantity of land;contained therein in the proper columns for that purpose.” By the 14th section, the tax, interest, and charges thereon, constitute a lien on the land, though aliened, and unless paid within two.years from the ,1st of May succeeding the assessment of such tax, the treasurer of the proper, county, after giving notice, is required'to.sell the'Same. And if the person claiming title to said lands shall not pay to the treasurer, for the use of the purchaser, his heirs or assigns, the sum paid by him for. the lands, with interest at the rate of .twenty per cent, per annum, the treasurer - shall execute to the purchaser, his-heirs or assigns, “ a conveyance of the lands so sold, which conveyance shall vest in the person or persons to whom it shall be given an absolute estate in fee-simple,” &c.; “ and such deed piay be given in evidence^ rnd recorded in the same manner and with like effect as a deed regularly acknowledged by the grantor may be given in evidence and recorded.” .. °
 

 It is first contended,
 
 “
 
 that the statutes of Michigan did not embrace the land in question, and were not intended to authorize their assessment.”
 

 In answer to this, it may be said, .that a different construction has been put' upon the above statutes by the authorities of the' territory, and also of the state since its admission .into the union. The practical construction of local laws is, perhaps, the best evidence of the intention of-the law-makers. The courts of the United States adopt as a rule of decision the established construction of local laws. And it cannot be material, whether such construction has been established by long usage or a-judicial decision.
 

 But'independently-of the'force of usage, we think the construction is sustainable. -When the land'was purchased and paid for, it’ was no longer the property of the United States, but of the-purchaser. He held for it a final certificate, which could no more be cancelled by the United States than a patent. It is true, if the land had been, previously sold'by the United States, or reserved from sale, the certificate or patent might be recalled by the United States, as having been issued through mistake. In this respect there is no difference between the certificate-holder and the patentee.
 

 It is said, the fee is not.in the purchaser, but in the United States, until the patent shall be issued. This is so, technically, at law, but
 
 *461
 
 not in equity. The land in the hands of the purchaser is real estate, descends to his heirs, and'does not go to his executors or administrators. In every legal and equitable aspect it is considered as belonging to the realty. Now, why cannot such property be taxed by its proper denomination as real estate ? In the words of the statute, “ as lands owned by non-residents.” And if the- name of the owner could not be ascertained, the tract was required to be described by its boundaries or any particulár name. We can entertain no doubt that the construction given to this act by the authorities of Michigan, in regard to the taxation of land sold by the United States, whether patented or not, carried out the intention of the law-making power.
 

 But it is insisted, ‘ thát the lands in question were not, before the date and execution of the patents for them, subject to taxation at all by the state of Michigan.”
 

 It is supposed that taxation of such lands is “an interference with the primary disposition of the soil by Congress,” in violation of the - ordinance of .1787 ; and that it is
 
 “
 
 a tax on the lands of the United States,” which is inhibited by the- ordinance. Now, lands which have' been sold by the United States can in no sense be called the property óf the United States. They are no more the property of the United States than lands patented. So -far as the fights of the purchaser ar.e considered, they are protected under the patent-certificate as fully as under the patent. Suppose the officers of the government had sold á'tract of land, received the purchase money, and issued a patent-certificaté, can it be contended that they could sell it again, and convey a good title ? They could no more do this than they could sell land a second time which had been previously patented. When sold, the government, until the patent shall issue, holds the- mere legal title for the land in trust for the purchaser; and any second purchaser would take the land charged with the trust.
 

 But it is supposed that because on some certificates patents may not be issued, taxation of unpaténted land is an interference ££ with the primary disposition of the land.” And it is said that in the case of Ostrom
 
 v.
 
 The- Auditor-General of Michigan, before the Circuit. Court in 1842, out of one .hundred certificates patents were refused on fourteen of them; that those lands had been sold for taxes and conveyed under the statutes of Michiganand that the United States either retain those lands or have conveyed them to third parties..
 

 Michigan does not warrant the title to lands sold for taxes. The deed, by the express words of the statute, when duly executed and recorded, ££ may be given in .evidence in the same manner, and with like effect, as a deed regularly acknowledged by the grantor,” &c. The government has no right to refuse a patent to a
 
 bond fide
 
 purchaser of land offered for sale. But where there has been fraud, or mistake, the patent may be withheld, and «very purchaser at a tax-sale
 
 *462
 
 incurs the risk as to the validity of the .title he purchases. He incurs’the same risk after the emanation of the patent. But.how this interferes with “ the primary, disposition.of the public lands,” by the United States, is not perceiyed. The salé-for taxes is made on the presumption'that the purchase from the government has been
 
 bona
 
 fide, and' if hot so made, the purchaser at the tax-sale acquires no,-title, and consequently no embarrassment can arise in the fixture disposition of the same'land by the government.
 

 . It is known to be universally the.practice in the west, where lands are’purchased for a residence and cultivation,'that 'the purchaser enters immediately into the possession of them.- And it may also be- observed, «that--inwall the new states, lands purchased of the United States have-uniformly been hejd hable to. be taxed before they are patented. And, indeed, in Ohio, under the credit systemj lands were taxed after the expiration of five years from the time of their purchase, although they had hot been paid for in full. There was no compact made with Michigan, as with Ohio, hot to tax lands sold by the United States until afterfhe Expiration of five years from . the time of sale. The court think that the. lands in question were ' liable to taxation under the .áuthorities of Michigan.
 

 It is contended “ that such lands should not be taxed at their full ■value, nor should they'be sold as if the claimant owned them in fee.”
 

 ■The statute does provide that the conveyance, under á tax-sále, shall vest in the purchaser an absolute estate in fee-simple',” &c. Two. years and more are-required to elapse after the tax shall hen-eóme due, before the land is liable to be sold; and the deed is notr. to be executed before the lapse of two years after the sale, during •which time the owner has a right to redeem. This is a tardy proceeding, and gives ample time to non-residents for the .payment of "théir taxes, &c. The land should be estimated at its full value, as the owner, having paid for it, is subjected tó no additional charge
 
 for
 
 the obtainment of the patent. And although the statute may purport to give a higher interest in the land than the owner: could convey, yet it does not follow that such title is inoperative.’ It must at least convey the interest which the owner has in the .lands. ' Or it may be that a higher interest is conveyed. But whether such a conveyance shall take effect as in fee, under the statute, when exe- ■ cuted, or when the patent shall be issued, or at any time, it cannot be necessary now to inquire. The only inquiry is, whether the land should not be estimated at its full value, and sold by the state for the tax regularly assessed upon it. The effect of the title is- not now before us fpr consideration. . The conveyance of real estate, whether by deed or by operation of law, is subject to the law of the state; and it is difficult to say that any restraint can be imposed upon the local power on this subject. It cannot, however, convey . a better title to the land sold for taxes than the owner of such land.
 
 *463
 
 to whom it stands charged, possessed at thé time the taxes constituted a lien, or when the land was sold. Whether the legislature may not .change the character of a title, so as to make that a legal title which before was only an.equity, is a very different question.
 

 In the case of the Lessee of Wallace
 
 v.
 
 Semour and Renich, Ohio Rep. 156, the court held
 
 u
 
 that a purchaser at a sale for taxes can acquire a right which can be enforced in equity, although . he ha.s been defeated at law.” But that case grew out of the pecii- ■ liar phraseology of the statute. It was also decided that “ where lands have been entered and surveyed in the military district, and' sold for taxes before patented, that when patented, the patentee should hold tire land subject to any claim winch a purchaser at tax-sale may have'in consequence óf such sale.” And in Lessee of Stuart
 
 v.
 
 O. Parish, 6 Ohio Rep. 477, that a purchaser of land ata tax-sale, before a patent was issued, could not set up, in an action of ejectment, the tax-deed against the patentee. In Douglass v. Dangerfield, 10 Ohio Rep. 156, the court say, in reference to taxing •lands before the patent, has been issued,
 
 “
 
 if the right to tax exists, and that it does there has not been any serious 'question for .many . years at least, it would'seem to follow that the right to collect must also exist..”
 

 . ' Under the Michigan statutes, we have no doubt, the law-making power intended to tax lands that had been entered and paid for, as the lands in question, and that it had the power to impose the tax. The nature of the title of such lands, under a tax-sale, not being involved in the points certified, we will not further discuss.
 

 In regard to the fourth point certified, we entertain no doubt, that, in a proper case, relief may be given in a court of equity. This may be done on die. ground to prevent a cloud from being cast on the complainant’s title, or to remove such cloud; to prevent multi-' plicity of suits, or.to prevent an injurious act by a public officer, for which the law might give no adequate redress. We answer" all the questions certified in tire affirmative.