[No. 414.   January Term, 1891.]

# THE UNITED STATES OF AMERICA, APPELLEES, v. FRANK SAUCIER AND JOHN SAUCIER, APPELLANTS.

PUBLIC LAND—TROVER FOR CUTTING AND CONVERSION OF TIMBER—WHO MAY MAINTAIN—EVIDENCE—PRESUMPTION.—An action of trover by the United States against trespassers on the public land, for the cutting and conversion of timber thereon, can not be maintained, where it appears from the testimony of the register of the United States land office that the preemptor has paid for the land as required by law, the presumption being that he has made final proof and that the final certificate has been issued to him, thereby vesting in him the equitable title to the land, who alone can maintain the action, under section 1882, Compiled Laws, requiring that every action shall be brought in the name of the real party in interest; and the fact that a contest for the land was heard in the land office in the year preceding the cutting of the timber does not alter it, since, under rule 5 of practice in contest cases in the local land office, a contest may be instituted as well after, as before, the final certificate issues.

ID.—ENTRY—ADMISSIBILITY OF EVIDENCE TO SHOW CHARACTER OF LAND
ENTERED.—Nor will the fact that the preemptor has entered the land
at the land office as agricultural land preclude inquiry as to its min-
eral character. Such entries are ex parte, and can not affect the
defendants in such case; and the question as to the mineral charac-
ter of the land is a material issue, and one of fact for the jury; and it
is error to exclude evidence of such fact.

APPEAL, from a judgment for plaintiff, from the
Third Judicial District Court. Judgment reversed, and
new trial ordered.

The facts are stated in the opinion of the court.

EUGENE A. FISKE and GEORGE C. PRESTON for
appellees.

If the defendants in this case have lawfully cut the
timber from the lands of the United States, they should
show it as a matter of defense, bringing themselves
clearly within the license of the act of June 3, 1878,
and the regulations of August 5, 1866. 15 Opinions of
Attorneys General, 191; Gould's Notes on Rev. Stats.
U. S., sec. 3456; 103 U. S. 697; 12 Pac. Rep. 851.

McFIE, J.—In this action the United States sued
Frank and John Saucier in the district court of the
Third judicial district, in an action of trover. The
declaration was filed March 7, 1888, and contains two
counts, the first charging that on the——day of——
A. D. 1887, the defendants cut and appropriated to
their own use five hundred trees of the value of $500;
the second charging the appropriation of ten thousand
feet of lumber of the value of $250 from the public
lands of the United States. October 1, 1888, defend-
ants filed a demurrer to the declaration, assigning the
following causes of demurrer: (1) That the first count
joins two separate causes of action—trespass and tro-
ver—and does not allege the date when committed;
(2) the second count does not allege the date of the

wrong or injury complained of; (3) that the declaration does not allege that the lands were nonmineral from which timber was taken. The cause was continued by consent until March term, 1889, and on the eleventh day of March, 1889, the court overruled the demurrer. The defendants filed two pleas: (1) not guilty; and (2) that if any timber was converted by defendants it was taken from mineral lands; that they were bona fide residents of the territory of New Mexico; that no trees were cut more than eight inches in diameter, and that the lumber was sold to bona fide residents, for building, agricultural, mining, and other domestic purposes. Plaintiff joined issue on first plea, and filed two replications to second plea denying that the land was mineral in character. Trial was had upon issues thus formed, by jury, and resulted in a verdict for plaintiff for $375. Motions for new trial and in arrest of judgment were overruled, and judgment was entered on the verdict. The defendants, to review this judgment, brought the case to this court by appeal.

The declaration alleges, and the proof shows, that the land from which the timber is alleged to have been taken, was sections 21 and 22, in township 11 south, of range 9 west, and situated in Sierra county, and in the Third judicial district of New Mexico. All of this land, with the exception of one forty acre tract (the S. E. of S. E. of sec. 21), is included in two preemption claims made at the Las Cruces land office by Mr. Austin Crawford and Mr. W. H. James. In fact the only attempt to locate the land from which the timber was alleged to have been taken was by witnesses testifying that the timber cut was upon these claims. There is no proof that there was any timber cut on the forty acre tract in section 21, not embraced in these preemption claims. A large number of errors are assigned, chiefly as to the admissibility of evidence, but there are two important questions presented by this record:

(1) Did the court err in giving to the jury its seventh instruction?   (2) Did the court err in excluding evidence offered by defendants as to the mineral character of the land?   During the progress of the

*Public land: trover for conversion of timber: evidence: presumption.*

trial Mr. E. G. Shields, at that time register of the United States land office for the Las Cruces, New Mexico, district, and custodian of the records of said office, was called as a witness for the plaintiff.   The records of the office were identified by him, and were competent evidence in the case.   Bly v. U. S., 4 Dill. 465.   Mr. Shields was recalled by the plaintiff, and testified as follows, as to whether the preemptors Crawford and James had paid the United States for the lands embraced in their preemption claims:   Question. "State whether Mr. James and Crawford have paid for this land in pursuance of the requirements of law.   Answer. Yes, sir."   The record is silent as to final proof or the issuance of final receipt.   In 1884 the commissioner of the general land office, in his instructions to registers and receivers, said:   "There is no authority for receiving proofs in advance of action in allowing or rejecting an entry, and you have no authority to act upon entry applications until the party is prepared to consummate entry by making proof and payment.   In other words, proof and payment must be made at the same time."   3 Land Office Decisions, p. 188.   We must presume, therefore, in the absence of proof to the contrary, that the officers of the government did their duty, and that final proof, showing full compliance with the law by the settlers, was made when payment was made.   In fact, the register was asked, and answered "that payment was made in pursuance of the requirements of law."   If that be true, then the settlers had done all that the law required of them, and the further presumption must then be indulged that final receipt was issued to these settlers for the land from which the

timber, if any, was taken.   Mr. Shields was asked, on
page 56 of the record, when payment was made, and
answered:   "I have forgotten the date now.   I think
it was in June, 1886, I said yesterday."   The declara-
tion alleges that the timber was appropriated "on the
———day of———, 1887."   No date being fixed, it is
limited to the year 1887.   The preemptors had pur-
chased and paid for the land prior to the alleged injury.
The settlers having done all they could, and paid the
government for the land, they, and not the United
States, were the real parties in interest, and had a
right to the damage, if the injury complained of had
been done.   If they had paid the government for the
land, and received their final certificate, they had a
right to sell the land, or mortgage the land; and it fol-
lows that they have the right to punish a trespasser
upon their possessions.   If the law has been fully com-
plied with by the preemptor, and he has paid for the
land, and received his final certificate, the certificate is
as good as a patent; and until the patent issues, while
the government had the naked legal title, it holds in
trust for the settler, who is the real owner for all bene-
ficial purposes.   After compliance with the law, pay-
ment, and the issue of final certificate of entry, the
land becomes segregated from the public domain.   The
secretary of the interior, on the nineteenth day of Feb-
ruary, A. D. 1885, in case of timber trespass upon a
homestead entry, which also segregates the land from
the public domain, says:   "But if it be conceded that
Landrum has entered, and is holding the land in good
faith, the tract covered by the entry is to be considered
as being to all intents and purposes Landrum's land;
and, if the McCombs have removed the timber there-
from without warrant the question is one between them
and Landrum.   The local courts have jurisdiction in
such cases, and Landrum can apply to them for pro-
tection, or for reparation of any injury that may have

been done him." 3 vol. p. Decisions Secretary of Interior, p. 421; 4 Id. 467, p. 467. Same as to preemption. While these decisions may not bind this court, they are very persuasive, coming as they do from the head of the land department of the government. In Carroll v. Safford, 3 How. 460, Mr. Justice McLean said: "When the land was purchased and paid for, it was no longer the property of the United States, but of the purchaser. He held for it a final certificate, which could no more be canceled by the United States than a patent. It is true, if the land had been previously sold by the United States, or reserved from sale, the certificate might be recalled by the United States, as having been issued through mistake. In this respect there is no difference between the certificate holder and the patentee." Myers v. Croft, 13 Wall. 290; Smith v. Ewing, 23 Fed. Rep. 745. The court below erred, therefore, in giving to the jury the following instruction: "(7) I charge you that the title to these lands, for the purposes of this suit, is in the United States." The fact that contests have been heard in the land office in August, 1886, does not alter the situation, for the reason that it is not shown when and how the contests were instituted; and, under rule 5 of practice in contest cases in the local land office, a contest may be instituted after the final certificate issues, as well as before; the only difference being that in that case the affidavit in contest must be forwarded to the commissioner of the general land office, who directs a hearing. From what has been said it follows that the lands from which the timber is alleged to have been taken were not public lands, and the plaintiff was not the real party in interest, as required by section 1882, Compiled Laws, which is as follows: "Every action must be prosecuted in the name of the real party in interest."

If it was conceded that the lands belonged to the United States, there is still a reversible error disclosed

by this record, in that the court refused to permit the
defendants to prove that the lands were mineral lands,
and compliance with the act of congress of June 3,
1878, under defendants' second plea.   While it may be
objected that the plea did not state all of
the facts necessary to a complete defense,
there was no demurrer to the plea, but
issue was joined as to whether or not the lands in ques-
tion were mineral lands.   The court, in excluding the
testimony. as to the mineral character of the lands,
practically excluded all of the defense, for, if the plea
had been technically correct, it would have been una-
vailing for the defendants to have proven compliance
with every other requirement of the law of June 3,
1878.   The court permitted evidence to go to the jury
as to the mineral character of lands outside the entries
of Crawford and James, but not of the lands within
the entries, holding, as the court is informed, that the
fact of their being entered at the land office as agricul-
tural lands precluded inquiry as to their mineral char-
acter.   The entries at the land office were ex parte, and
could not affect the defendants in this case.   Whether
the lands were mineral in character or not was a mate-
rial issue, and a question for the jury.   The court
erred, therefore, in excluding the testimony.   In view
of the fact that we have indulged some presumptions
that plaintiff may be able to rebut with testimony on
another hearing in the lower court, the judgment of
the lower court will be reversed, and cause remanded,
with instruction to the lower court to sustain the
motion for a new trial, and such further proceedings as
may be deemed proper.

O'BRIEN, C. J., and SEEDS, LEE, and FREEMAN,
JJ., concur.