## WILLIAM A. WILCOX et al. v. PHILLIPS et al., Appellants.

**Division One, November 21, 1906.**

1. **TAXATION: Entry and Location: Assignment: Patent.** An entry of location of land by the assignee of a military-bounty land-warrant, on the tract-book at the proper land office, and a record of a copy of that entry in the recorder's office of the county where the land lies, gives to the locator or entryman the equitable title, and is sufficient to authorize the assessment of the land for taxes against the entryman, and service upon him in the tax suit will uphold a judgment for taxes against the land, and the purchaser at the tax sale takes the title, although the entryman may, after such location, have legally assigned the certificate of location to another and the United States on the authority of that assignment have issued a patent to the assignee, which, although issued long before the tax suit was brought, was not recorded in the county where the land lies until after the tax suit was brought, and the land sold.

2. ———: ———: **Failure to Record Patent.** The patentee of land, to whom a patent was issued in 1860, who failed to have it recorded till 1902, can not complain that the land was in the meantime assessed for taxes against his assignor, the entryman whose entry was recorded in the county. And in the absence of actual notice of ownership by the patentee or his grantees, suit for taxes in such case should be brought against the entryman, as the record owner, although he may, before the patent was ever issued, have assigned his certificate of entry and location to the patentee and the patentee have sold the land by a recorded deed to plaintiff's ancestor, and that ancestor at the time the suit was brought have been dead for many years; and if so brought, and the service is legal, judgment and sale will convey the title to the purchaser.

3. ———: **Patent: Record: Innocent Purchaser.** Within the meaning of the Missouri registry act a patent is not different from any other muniment of title, and like a deed should be filed and recorded, and if by failure to record the rights of innocent parties accrue, such rights must prevail, just as in cases where there is a failure to file a deed.

Appeal from Sullivan Circuit Court.—*Hon. Jno. P. Butler,* Judge.

REVERSED AND REMANDED.

*Wattenbarger & Bingham, Calfee & Eubanks* and *Campbell & Ellison* for appellants.

(1) Section 9187, Revised Statutes 1899, provides as follows: "Government lands entered or located on or prior to the first day of June, shall be taxable for that year, and for every year thereafter." This statute has been on our books for many years and never until this decision, to our knowledge, has the right of a State to tax lands from the date of entry been questioned. The following cases seem to us to settle the question beyond cavil: Witherspoon v. Duncan, 4 Wall. 210; Railroad v. Price County, 133 U. S. 692; Carroll v. Stafford, 44 U. S. 441; Widdecombe v. Childers, 124 U. S. 404; Egbert v. Bond, 148 Mo. 23; Hadrick v. Beeler, 110 Mo. 91; Wilhite v. Barr, 67 Mo. 284; Callihan v. Davis, 90 Mo. 78; Johnson v. Fluetsch, 176 Mo. 470; Wirth v. Branson, 98 U. S. 118; Stark v. Starr, 73 U. S. 402. (2) At the time the suit for taxes was brought, the apparent record owner of the land in controversy was William H. Brownlee. The patent issued by the Government to this land in 1860 was not placed on record until 1902, almost two years after the land was sold for taxes. Neither was the assignment of the certificate of entry placed on record until that time. Brownlee, the only apparent and record owner of this

land, was made a party to this suit and was personally served with summons. Appellants bought the land at the tax sale and received a title paramount to the holder of an unrecorded patent of which appellants had no notice, actual or constructive. We, therefore, stand on the doctrine laid down in Vance v. Corrigan, 78 Mo. 94; Allen v. Ray, 96 Mo. 542; Payne v. Lott, 90 Mo. 676; Lucas v. Land & Cattle Co., 186 Mo. 456; St. Joseph v. Forsee, 110 Mo. App. 127. The tax collector has a right to resort to the plat book on file in the recorder's office to ascertain the ownership of lands. State ex rel. v. Sack, 79 Mo. 661; Watt v. Donnell, 80 Mo. 195; Cowell v. Gray, 85 Mo. 169. The plat book being made admisssible in evidence means that it must be of some importance in determining the ownership of lands. Wilhite v. Barr, 67 Mo. 284. (3) The deeds offered in evidence by respondent from Montgomery to Martin, and from Martin to Bradbury, and from Bradbury to Wilcox were outside the chain of title and did not impart notice of title to any one. Tidings v. Fitcher, 82 Mo. 379; Becker v. Strother, 167 Mo. 306; Bank v. Bank, 171 Mo. 327; 16 Am. and Eng. Ency. Law (1 Ed.), 800.

*Wilson & Clapp* and *A. W. Mullins* for respondents.

(1) The fee of land disposed of by the United States remains in the Government until the patent issues. Carmon v. Johnson, 20 Mo. 108; Le Beau v. Armitage, 47 Mo. 138; Sands v. Davis, 40 Mich. 14. (2) A patent is a better legal title than an entry. Delassus v. Winn, 174 Mo. 636. (3) The patent was recorded in the General Land Office. This was notice to the world, and was conclusive that the legal title vested in the patentee. R. S. U. S., sec. 458; Evitts v. Roth, 61 Tex. 81; 20 A. & E. Enc. Law (1 Ed.), 530; David v. Rickabaugh, 32 Iowa 540; Webster v. Clear, 49 Ohio St. 392. (4) A

judgment recovered in a suit begun and prosecuted against a dead person is void. Graves v. Evart, 99 Mo. 13. (5) The heirs of Abbie D. Wilcox, not having been made defendants in the tax suit, the tax proceedings did not divest their interest, and they are entitled to recover in this action. Walcot v. Hand, 122 Mo. 621. (6) Brownlee was not the apparent owner of the land within the meaning of the statute; Abbie D. Wilcox was the apparent owner, and her heirs the real owners. Sec. 9303, R. S. 1889; Vance v. Corrigan, 78 Mo. 94; State ex rel. v. Sack, 79 Mo. 661; Allen v. Ray, 96 Mo. 542. (7) The deeds of Montgomery, Martin and Mrs. Bradbury, being recorded, imparted notice to all persons of the contents thereof, and the defendants purchased with notice. Secs. 923, 924, R. S. 1899. (8) United States patents may be recorded in the county where the land is situated. Recording them, however, is not compulsory and their recording does not impart notice as in the case of deeds. Secs. 923, 924, 9077, 9078, R. S. 1899. (9) The purchasers at the tax sale bought only the right, title and interest of Brownlee, who never was at any time the owner of the land; and a sheriff's deed conveying his right, title and interest conveyed nothing in reality. Watt v. Donnell, 80 Mo. 195; Powell v. Greenstreet, 95 Mo. 13; Blevins v. Smith, 104 Mo. 583; Moore v. Woodruff, 146 Mo. 597; Wood v. Smith, 91 S. W. 85.

GRAVES, J.—The facts in this case were elaborately and correctly stated in the opinion first filed, by MARSHALL, J., which statement, after careful examination, we adopt. The statement follows:

"This is an action in ejectment to recover the south half of the northwest quarter, and the northeast quarter of the southwest quarter of section 3, township 63, in Sullivan county. The ouster is laid as of the 15th of March, 1902.

"The answer admits the possession of the premis-

es by the defendants, but denies all the other allegations in the petition. The action was originally instituted against the defendants Phillips and Reed. Afterwards, on their own application, John M. and Arthur D. Campbell were made parties defendant, and filed a separate answer, in which they admitted that the defendants Phillips and Reed were in possession at the commencement of the suit, deny all the other allegations of the petition, and then affirmatively plead that on the 19th of October, 1900, the land was sold by the sheriff, under a judgment for back taxes, in a suit against William H. Brownlee, and that the said defendants (Campbells) became the purchasers at said sheriff's sale, and afterwards, on the 15th day of March, 1902, sold the land to the defendants Phillips and Reed, and that by virtue of their purchase at the sheriff's sale they became owners of the land.

"The cause was tried on the 10th of April, 1902, by the court, a jury being waived, and judgment was rendered for the plaintiffs for possession, and for $20 damages, and $3 a month, rental value. After proper steps the defendants (Campbells) appealed.

"To sustain the issues on their behalf, plaintiffs proved that they are the heirs of Abbie D. Wilcox, who was the wife of William Lucas Wilcox. Abbie died October 26, 1884, and William died in June, 1889. The plaintiffs next introduced in evidence a patent to the land in controversy from the government of the United States, dated the 16th of June, 1860, which recites that:

" 'In pursuance of the act of Congress, approved March 3rd, 1855, entitled, "An act in addition to certain acts granting bounty lands to certain officers and soldiers, who have been engaged in the military service of the United States," there has been deposited in the General Land Office, warrant number 31879, for one hundred and twenty acres, in favor of Charles Jones, private, Captain Alsbery's company, Kentucky Militia, war of 1812, with evidence that the same has been duly

located upon the northeast quarter of the southwest quarter, and lot numbered 1, of the northwest quarter of section 3, in township 63, of range 18, in the district of lands formerly subject to sale at Milan, now Boonville, Missouri, containing one hundred and twenty acres, according to the official plat of the survey of the said land returned to the General Land Office by the Surveyor General, the said warrant having been assigned by the said Charles Jones to William H. Brownlee, in whose favor the said tract has been located and the certificate of said location having been assigned by him to James Montgomery. Now Know Ye, that there is therefore granted by the United States unto the said James Montgomery as assignee as aforesaid and to his heirs, the tract of land above described—to have and to hold the said tract of land with the appurtenances thereof, unto the said James Montgomery as assignee as aforesaid and to his heirs and assigns forever.'

"This patent was recorded in the office of the recorder of the General Land Office, and was filed for record in the office of the recorder of deeds for Sullivan county on the 2nd of August, 1902.

"And plaintiff then showed a conveyance of the land from James Montgomery and wife to Leroy Martin, on the 18th day of May, 1864, which was recorded in Sullivan county on the 11th of March, 1866; and likewise a conveyance from Martin, a single person, to Hercillia G. Bradbury, on the 11th of June, 1878, recorded on the 13th of June, 1879; also a conveyance from said Bradbury to Abbie D. Wilcox, dated January 7th, 1879, recorded January 13th, 1879.

"The plaintiffs also offered evidence showing that they, or their ancestors, paid taxes on the land for the years 1882, 1883, 1885, 1886, 1887, 1888, 1889, 1891, 1892, 1893 and 1894. They further introduced evidence tending to show that the land was never fenced, but is what is denominated 'brush land,' and that the defendants Phillips and Reed, since they entered into posses-

sion, fenced some of it, cleared a portion of it and put a part into cultivation and perhaps built a house upon it. This was all the evidence offered by the plaintiffs in chief.

"To sustain the issues on their behalf, the defendants introduced a certified copy of the tract-book of the Register of the Land Office at Boonville, Missouri, showing that on June 13th, 1857, William H. Brownlee entered the land, and that a copy of such entry was recorded in the recorder's office of Sullivan county. The plaintiffs objected thereto upon the ground that the patent issued by the United States to James Montgomery, was superior to the entry of the land as shown by the certificate. The court overruled the objection and the plaintiffs excepted.

"Defendants next offered in evidence the files in the tax suit, which ran in the name of the treasurer and ex-officio collector of revenue, against James Montgomery, William H. Brownlee and Abbie D. Wilcox, and which was filed on the 5th of December, 1899, for the taxes for the years 1895, 1896, 1897 and 1898; also the summons and return thereon, showing personal service on William H. Brownlee, on the 26th of February, 1900; also the judgment roll from which it appeared that no service of any kind was ever had on the defendant James Montgomery, and that the service was by publication on Abbie D. Wilcox, who had, as previously stated, died on October 26th, 1884; the order of publication being based upon the allegation that she was a non-resident of the State.

"The defendants also introduced the deposition of William H. Brownlee, a man seventy years of age, who testified that he entered land in Sullivan county in 1857, but that he could not state the section, township or range of the land entered by him. He also stated that he had received patents for the land entered by him. He likewise stated that he had no recollection of the sheriff serving the summons in the tax suit upon him,

but that he did not doubt the truth of the sheriff's return.

"The defendants then read in evidence the sheriff's deed in the back tax suit, purporting to convey the interest of James Montgomery, William H. Brownlee and Abbie D. Wilcox, to the defendants John M. and Arthur D. Campbell—the deed being dated October 20, 1900.

"The plaintiffs objected to the deed upon various grounds; among them, that the judgment roll and the files in the back tax suit showed no service upon defendant James Montgomery, and that the service by publication as to Abbie Wilcox was void, because she had died in 1884, some fifteen years before the suit was instituted; and further on the ground that the certificate of location of the land conveyed no title to Brownlee, but that the title remained in the United States, until the patent was issued, and that as that patent was issued to Montgomery, as assignee of Brownlee, who was the assignee of Jones, the soldier who was entitled to make the entry, the title never passed out of the Government until the patent was issued. The court overruled the objection and the plaintiffs excepted.

"The defendants also introduced evidence that Reed and Phillips had partially fenced, cleared and cultivated the land, but had built no buildings thereon. The defendants then rested.

"In rebuttal the plaintiffs introduced evidence showing that the tract book of the Register of Land Office at Boonville, Missouri, showed that on the 18th of April, 1857, William H. Brownlee entered eighty acres, being the east half of the southeast quarter of section 19, township 63, range 21, and on the same day entered 80 acres, being the west half of the southwest quarter of section 20, township 63, range 21, and on the 27th of August, 1857, he entered one hundred and twenty acres, being the west half of the southeast quarter, and the southeast quarter of the southwest quar-

ter, of section 11, township 64, range 20; that on the
13th of June, 1857, he entered seventy-eight and eigh-
teen hundredths acres, being lot two of the northwest
quarter of section 5, township 64, range 21, and on the
same day he entered one hundred and nine and twen-
ty-one hundredths acres, being the west half of lot two
of the southeast quarter, and the east half of lots one
and two of the northwest quarter of section 6, town-
ship 64, range 21, and also on the same day he entered
thirty-eight and seventy-two one-hundredths acres, be-
ing the east half of lot two of the northeast quarter of
section 6, township 64, range 21.

"The defendants requested the court to declare
the law to be, that under the evidence the plaintiffs
were not entitled to recover, and also that if the tract-
book showed that Brownlee entered the land in ques-
tion and that Brownlee was served with process in the
tax suit, the plaintiffs could not recover. The court re-
fused so to instruct and the defendants excepted.

"At the request of the plaintiffs the court declared
the law to be that the patent from the United States to
James Montgomery and the conveyances from Mont-
gomery to others and from them to Abbie D. Wilcox,
conveyed the legal title to said Wilcox, and that if she
died in the year 1884 and the plaintiffs are her heirs,
then the plaintiffs were entitled to recover, unless the
judgment in the tax suit conveyed the land to the de-
fendants. The court further instructed that the pur-
chasers at the back tax sale acquired only the title of
the defendants to that action against whom a valid
judgment was rendered, and if Abbie D. Wilcox was
dead when the judgment against her was rendered that
judgment was a nullity as to her; and that the evidence
showed that at the date of the judgment James Mont-
gomery had no title to the land.

"The court further declared the law to be that
the title to the land remained in the United States un-
til the patent was issued to Montgomery, and that the

patent was better legal evidence than the prior entry or location of the land warrant.

"The court further instructed that no title to the land ever vested in Brownlee by whom the land-warrant was located, but that the title passed from the Government of the United States to Montgomery and that Brownlee was never the owner of the land, and was not the apparent owner of record.

"The court then further instructed that under all the evidence in the case the finding and judgment should be for the plaintiffs."

## I.

1. From this statement it appears that the entryman, William H. Brownlee, is, in fact, the common source of title, that is to say, he entered and located the land, and it is through this entry and location, both sides in this controversy claim title — defendants through a tax proceeding, wherein personal service was had upon the entryman, Brownlee, and the plaintiffs through a patent (recorded after tax judgment and sale), which patent is based upon the assignment of Brownlee, the entryman, and but for which assignment, the patent would not have been issued by the General Government. The patent under which plaintiffs claim evidences the fact that the rights granted are rights coming from and through William H. Brownlee. The entry of Brownlee was duly of record in Sullivan county, and we are confronted with the question as to what is the force and effect of a recorded entry, in this county, as against an unrecorded patent to an assignee of the entryman, in these tax proceedings. An answer to that question will determine this controversy.

That an entryman, by force of his entry, acquires an equitable title seems to be well settled in this State. In the case of Johnson v. Fluetsch, 176 Mo. 452, covering the assignment of a warrant similar to the one

involved in the case at bar, GANTT, J., among other things, said:

"When John F. Stephan located his warrant and received his certificate of entry and purchase, he was required by law to deliver up his warrant to the register of the land office at St. Louis, and this the evidence shows he did. He could not control the officers of the land office, neither is he responsible for their neglect of duty in failing to report his location to the General Land Office at Washington City. The equitable title of the United States passed to the defendant's remote grantor, Stephan, and the Government had no right to patent it to plaintiff. The right to a patent once vested as respects the Government is equivalent to a patent. [Wickersham v. Woodbeck, 57 Mo. 59; Wirth v. Branson, 98 U. S. 118; Stark v. Starrs, 73 U. S. 402.]

"While the State has no right to control the primary disposition of the public lands belonging to the United States, yet when the title passes from the Government, the State courts have jurisdiction to determine the controversy between the adverse claimants thereto. [Magwire v. Tyler, 45 Mo. 406; Hedrick v. Beeler, 110 Mo. 91; Carman v. Johnson, 20 Mo. 108.]"

In the Wickersham case, above cited by Judge GANTT, NAPTON, J., says: "The register's and receiver's receipt is evidence that the State has passed the title, although the formality of a patent is wanting. The equitable title is at least passed, for the purchase money is paid, and the State cannot transfer her title, which is a mere naked legal title, to another."

Justice BRADLEY, in Wirth v. Branson, 98 U. S. 118, says:

"We are satisfied that the second instruction, at least, correctly expressed the law of the case, and renders the production of the original patent to Egerton entirely immaterial. The land in question was shown to have been located in his favor in due form, under a regular military land warrant, and no attempt was

made to show that this location was ever vacated or set aside. While this location was in force, no other could lawfully be made on the same land. A subsequent location, though followed by a patent, would be void. Everything was done which was required to be done to entitle Egerton to a patent to the land. Being for military bounty, no price was payable therefor. The land became segregated from the public domain, and subject to private ownership, and all the incidents and liabilities thereof.

"The rule is well settled, by a long course of decisions, that when public lands have been surveyed and placed in the market or otherwise opened to private acquisition, a person who complies with all the requisites necessary to entitle him to a patent in a particular lot or tract is to be regarded as the equitable owner thereof, and the land is no longer open to location. The public faith has become pledged to him, and any subsequent grant of the same land to another party is void, unless the first location or entry be vacated and set aside. This was laid down as a principle in the case of Lytle v. Arkansas, 9 How. 314, and has ever since been adhered to. [See Stark v. Starrs, 6 Wall. (73 U. S.) 402, 18 L. Ed. 925.] Subsequent cases which have seemed to be in conflict with these have been distinguished from them by the fact that something remained to be done by the claimant to entitle him to a patent; such as the payment of the price, the payment of the fees of surveying, or the like. The proper distinctions on the subject are so fully stated in the cases of Stark v. Starrs (supra); Frisbie v. Whitney, 9 Wall. (76 U. S.) 187, 19 L. Ed. 668; Yosemite Valley case, 15 Wall. (82 U. S.) 77, 21 L. Ed. 82; Railroad v. McShane, 22 Wall. (89 U. S.) 444, 22 L. Ed. 747; and Shepley v. Cowan, 91 U. S. 330, 23 L. Ed. 424, that it would be supererogation to go over the subject again."

It will be noticed that the entry to the land in dispute was made under military-bounty land-warrant No.

31879, in favor of Charles Jones, for 120 acres of land. This court in the Johnson case, supra, held these warrants assignable, even prior to the Federal Act of 1852. Under these warrants, when the land was located either by the person in whose favor the warrant was issued, or his assignee, it became the duty of the Government to issue a patent. No price was to be paid. These were bounty warrants, issued in recognition of service to the Government, and the party having the warrant had the right to assign it, and to the Government remained the one duty of issuing a patent. In such cases where the land was located, whether by the original holder of the warrant or his assignee, the General Government held a mere naked legal title and no more, a title which in good conscience and law ought to be vested in the party locating, whether such locator be the original holder of the warrant or his assignee. By act of Congress, the General Government, in issuing the warrant in this case, equitably divested itself of the title to 120 acres of the public domain with the right in the holder of the warrant, or his assignee, to go and locate the land. When this was done, as in this case, the mere naked legal title remained in the Government, because all conditions had been complied with, and it only remained for the patent to be issued by the Government. When the location was made by Brownlee, the presumption might be indulged that the patent would follow to him, although he legally had a right to assign and thus have the patent issued to his assignee. This entry in his name was on the records in Sullivan county and the effect of it was to divest the General Government of all rights, except a mere naked legal title, but yet leaving the duty to convey that naked legal title to Brownlee, unless he, by assignment, directed otherwise. This case differs from that class of cases where, after entry, something remains to be done by the entryman. Here the entryman became entitled absolutely to a patent when he located upon Government lands, theretofore

untaken, and the case is readily distinguishable in a way from cases where certain conditions are to be performed after the entry, as in homestead cases.

2. Further, along the line as to what force should be given to the record of entry, in such cases, and in some even less strong than this, it is generally recognized that the mere entry or location of the land authorizes the State to tax the same, and to that end the entryman becomes the owner for that purpose. This, even in cases where there remain conditions to be performed after entry and before issuance of patent.

In this case there being no conditions after entry, there was and is a stronger reason for giving the State the right to tax. [Railroad v. Price County, 133 U. S. 496; Carroll v. Safford, Treas., 3 How. 441; Witherspoon v. Duncan, 71 U. S. 218; Widdicombe v. Childers, 124 U. S. 404.]

Our own statute contemplates the assessment of these lands in the name of the entryman. Section 9187, Revised Statutes 1899, says: "Government lands entered or located on or prior to the first day of June shall be taxable for that year and every year thereafter." Notice the language—It does not say when patent is issued and placed on record, because this would defeat the State in the collection of its taxes. Parties entitled to patents, to defeat taxes, might not apply for them and if they did, might hold them from record in the county. But what the statute does say, is that these lands shall be subject to taxation after entry and location, and in effect says such entryman or locator is the owner for the purpose of a valid tax judgment.

Our own cases have consistently recognized this doctrine. [Payne v. Lott, 90 Mo. 680; Nolan v. Taylor, 131 Mo. 224.]

Again, our statute, section 3054, provides: "An action for the recovery of the possession of land may also be maintained against any person not having a better title thereto, in all cases where the plaintiff

claims possession thereof under or by virtue of: First, an entry or bounty land-warrant location with the register and receiver of any land office in the United States, or with the commissioner of the General Land Office thereof. . . ."

And further, our court has held that the title of an entryman is sufficient upon which to maintain an action in ejectment. [Callahan v. Davis, 90 Mo. 78; Wilhite v. Barr, 67 Mo. 284; Egbert v. Bond, 148 Mo. 23; Hedrick v. Beeler, 110 Mo. 91; Nolan v. Taylor, 131 Mo. 224.]

We are thus forced to the conclusion that the entryman not only had such apparent title as would authorize ejectment in the absence of better title, but further, such a title as would make such entryman the owner of the land within the meaning of our revenue acts.

## II.

If Brownlee was the common source of title and if the plaintiffs, who claim through Montgomery, the assignee of Brownlee, failed to record their patent, in time to notify the collector and public that they were the legal owners of the land, then they have no right to complain here. As owners of the land, they had the two-fold duty, first, of paying their taxes, and, secondly, of at least notifying the world that they had acquired the title of Brownlee. This they did not do until after judgment and sale. A patent issued in 1860 is recorded in 1902, stating to the public for the first time, so far as this record shows, that plaintiffs claimed title through the assigned right of William H. Brownlee, and they had to claim through this right or not at all.

It was aptly said in Nolan v. Taylor, 131 Mo. l. c. 228, by MACFARLANE, J.:

"The law requires the owner to be made a party in order that he may have opportunity to defend against the charge upon the land, or to avoid a sale by payment of the taxes.

"At the same time, it was not intended that the owner should escape taxation by withholding the evidence of his title from record. Hence, it is held that the owner, within the intent and meaning of the law, and in the absence of notice to the contrary, shall be taken to be the person who appears, from the records of the county, to be the owner. [Payne v. Lott, 90 Mo. 680, and cases cited.]

"For the purpose of ascertaining the ownership of land for the purposes of taxation, and for charging it with the taxes, the officers are not confined to what is disclosed by the registry of deeds, but may have resort to the duly certified copy of entries made on the books of any register of any United States land office on file in the county. The person who appears from this copy to have entered the land will be taken as the *true owner* unless other records of the county show the title to be in some other person.

"In the case above cited it was expressly held that a judgment for taxes, under the revenue law, against one who appeared, from a copy of such entries, to be the *true owner,* and a sale thereunder, was sufficient to carry the title as against one holding an unrecorded deed from such apparent owner."

In the case at bar the revenue officer had the right to rely upon the fact that the records showed this land, by entry, had passed to Brownlee and had not passed from him. The public had a right so to rely, after judgment and at sale, there being no evidence of a transfer from Brownlee at the time of sale. In such case the filing of the patent after sale would be in violation of the spirit of our registry act, if it were permitted to defeat the title acquired by the sale.

This conclusion makes it unnecessary to take up other minor questions.

We, therefore, say that for the purpose of taxation the entryman, Brownlee, was the owner of the land; that plaintiffs could have averted this controversy by

the payment of their taxes, or if not desirous of doing that, by simply recording their evidence of an assigned title from Brownlee in due time; that there is nothing in this record to bring home to defendants knowledge of this assigned title prior to date of sale, although it could have been shown to them by the simple act of recording a patent; that within the meaning of our registry act, a patent is not different from any other muniment of title, and like a deed, must be filed and recorded; that if by a failure to so file and record, rights of innocent parties accrue, such rights must prevail, the same as in cases where there is a failure to file a deed; that in this case there is shown no sufficient adverse possession in plaintiffs to have given title as against Brownlee, the entryman; that plaintiffs must stand or fall upon their record title as shown by the evidence.

Such being our views, it follows that the case should be reversed and the cause remanded to the circuit court, to be proceeded with therein in accordance with this opinion.

All concur.