**UNITED STATES et al. v. CITY OF NEW BRUNSWICK et al.**

(Circuit Court of Appeals, Third Circuit. March 11, 1926.)

No. 3349.

Taxation ⟨⇒⟩5—Tax assessment by municipality on real estate sold by government, retaining first lien for unpaid purchase money as required by statute, was unlawful.

Where United States Housing Corporation, as agent for United States, sold real estate, retaining title in government by reserving first lien for unpaid purchase money as required by statute tax assessment on such property by municipality was unlawful.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit by the United States and another against the City of New Brunswick and others. From a decree dismissing the bill (1 F. [2d] 741), plaintiffs appeal. Reversed, with directions.

Walter G. Winne, U. S. Atty., of Hackensack, N. J., and Walter H. Bacon, Jr., Asst. U. S. Atty., of Trenton, N. J. (Howard W. Ameli, Asst. Atty. Gen., and Thomas W. O'Brien, of Washington, D. C., of counsel), for appellants.

Thomas H. Hagerty, of New Brunswick, N. J. (Russell E. Watson, of New Brunswick, N. J., of counsel), for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. With the close of the war it became the duty of the United States Housing Corporation, a corporate agency owned by the United States, to sell the here involved real estate belonging to the United States. Its power to sell was with the statutory provision and limitation "that no sale or conveyance shall be made hereunder on credit without reserving a first lien on such property for the unpaid purchase money." Having found purchasers for some 200 lots, it entered into written agreements to sell on credit, one-tenth of the purchase money to be paid in cash and the balance secured by purchase-money mortgage. Pending the carrying out of the contract the city of New Brunswick, in which the premises were located, assessed taxes thereon which, if validly assessed, constitute a first lien on the premises, and in the words of the statute prevent the United States from therein "reserving a first lien on such property for the unpaid purchase money." Thereupon the United States and the Housing Corporation filed a bill against the city, alleging the said taxes were unlawfully assessed against the property because they were owned by the United States.

Upon hearing the court below dismissed the bill, whereupon this appeal was taken, and as the principle that property of the United States is not subject to state or municipal taxation, the question here involved is: Does this property belong to the United States? That the title to it is in the United States is a fact, and that the ownership of title means ownership of property is a sequence, unless the titleholder is a mere naked trustee, holding for the sole benefit of another and to whom he is bound to convey. As applicable to the United States, that situation arises in many reported cases involving the sale of the public lands by the government, and the purchaser who has paid all his purchase money became entitled to and actually received from the government a "patent certificate," which is an assurance that in office routine and due course he will receive the formal patent. In such cases, as is said in Carroll v. Safford, 3 How. (44 U. S.) 441, 11 L. Ed. 671, "when sold, the government, until the patent shall issue, holds the mere legal title for the land in trust for the purchaser." Indeed, under the practice of the Land Office, it is clear that the patent certificate, when issued by the government, is its real ownership-divesting act. When the purchaser has paid all his purchase money and complied with other government requirements, and the government has executed and delivered to him his patent certificate, government ownership, with nonliability to tax assessment, has ended, and, with that ending, private ownership, with liability to tax assessment, has begun.

This is clearly stated in Goodlet v. Smithson, 5 Port. (Ala.) 245, 30 Am. Dec. 561. So, also, in Carroll v. Safford, supra, it is held: "When the land was purchased and paid for, it was no longer the property of the United States, but of the purchaser. He held for it a final certificate, which could no more be canceled by the United States than a patent." And the title-divesting effect against the government of its patent certificate, based on its receipt of all the purchase money and its corresponding title-investing and invested effect in favor of the purchaser, who has paid all the purchase, is thus stated in Goodlet v. Smithson, supra. "So, previous to the issuance of a patent, the estate of one in lands purchased of the United States, and for which he has received a certificate of final payment, may be levied on and sold under execution, issued on a judgment at law," and ejectment can be maintained under such certificate. Indeed the mere naked trusteeship of the government in relation to such fully paid for land is stated in Witherspoon v. Duncan, 4 Wall. 210, 18 L. Ed. 339, where it is said: "The contract of purchase is complete when the certificate of entry is executed and delivered, and thereafter the land ceases to be a part of the public domain. The government agrees to make proper conveyance as soon as it can, and in the meantime holds the naked legal fee in trust for the purchaser, who has the equitable title. As the patent emanates directly from the President, it necessarily happens that years elapse before, in the regular course of business in the General Land Office, it can issue."

But the situation here involved is wholly different. We are not dealing with a case

where all the purchase money has been paid, nor where the government, after the purchase money has all been paid and the government has issued an ad interim conveyance in the shape of a patent certificate to bridge over the delay before it can physically execute its patent, but we have before us a case where all the purchase money has not been paid, and where the statute itself evidences and asserts the government's purpose to retain the title until it can be protected by "reserving a first lien on such property for the unpaid purchase money." By its mere agreement to sell on payment of a proportionate hand payment, clearly the government's beneficial ownership of the property did not cease, and unless such ownership ceased the government held the property immune from taxation. We enforce the statute when we hold that there was no authority to sell this land on credit and divest the government's ownership "without reserving a first lien on such property for the unpaid purchase money." This could not be done until the purchaser had fully performed every provision of the contract made pursuant to the statute, and the city made this impossible for him to do by assessing the taxes in question. To enable the government to sell the land in accordance with the requirements of the statute and convey title thereto, we must hold the assessment of these taxes by the city to be unlawful.

The decree of the court below, in so far as it validated any of these assessments, was in error, and must be reversed, and to avoid delay in the matter it is suggested that counsel confer, and, if possible, prepare, in accordance with this opinion, the form of a decree to be entered by the court below, which may be inserted in our mandate.