WILLIAM A. WILCOX et al., Appellants, v. J. B. PHILLIPS et al.

.Division One, July 14, 1914.

1. **RES ADJUDICATA:** Former Appeal: Reversal With Directions. Where the Supreme Court on an appeal from a judgment in favor of plaintiffs in ejectment reversed the judgment and remanded the cause "to be proceeded with in accordance with this opinion," the trial. court has authority to try the case again, and is not restricted to entering judgment for defendants, whether an amended petition (adding a count in equity for reformation of a deed) be filed or not, and if filed whether filed with or without objection, unless such course is necessarily inhibited by the opinion. [Following Mangold v. Bacon, 237 Mo. l. c. 512.]

2. ———: ———: ———: Not Raised in Trial Court. Unless defendants, after a reversal of a judgment for plaintiffs and a remanding of the cause "to be proceeded with in accordance with this opinion," move for a judgment in the trial court without a retrial, they cannot be heard to contend on the second appeal that such court had no authority to try the case again, but was restricted to entering judgment for them.

3. **TAX SUIT:** Notice: Due Process of Law: Deceased Defendant. A judgment in a tax suit, against a record and actual owner who had been dead fifteen years at the time the suit was brought, cannot be held to be based on due process of law against her heirs, for they were not served or notified, and absent notice there is no due process of law.

4. ———: Personal Service on Record Owner: No Record of Patent in County. Where the tract book, duly certified and recorded, showed a certain person was the entryman of land

and he was personally served in the tax suit and made default, when in fact he had assigned his certificate of location to another defendant in the tax suit who was not served, and to him had been issued a patent duly recorded in the General Land Office at Washington but not in the county where the land lies, and the title passed from him by a recorded deed to another defendant who was served by publication and who was dead at the time the tax suit was brought, the purchasers at the tax sale acquired only the interests of the entryman (which was nothing), and did not acquire the title of the actual owners, the legal heirs of the deceased defendant, and nothing in the statutes would give the judgment against the entryman (even though he be allowed to be an apparent record owner) the legal effect of depriving the true owners (who had no day in court) of their property.

5. ———: **Record of Patent.** To pass title or impart notice neither a patent from the United States nor a patent from the State itself needs to be recorded in the county in which the land lies. A record of a patent in the General Land Office at Washington imparts notice, since the law requires that patent to be recorded before it is issued.

6. ———: **Sale: Notice of Ownership: General Principles Apply.** It is a mistake to suppose that the taxation statutes proceed on the theory that the landowner loses his land in pursuance to a tax suit and sale on principles different from those on which landowners lose their lands on general or special judgments followed by sheriff's deeds. The widespread notion that there is something peculiar about tax sales and tax deeds that takes them out of the generally recognized principles relating to notice of ownership in another is mischievous and unauthorized by statute.

7. ———: ———: **Actual or Constructive Notice of Ownership.** Even though the tax suit is brought against the apparent record owner, a purchaser at a sheriff's sale gets no title where he has notice of an outstanding title in another, either (1) by the record of a previously unrecorded deed during the pendency of the tax suit, or (2) by such record after judgment and before sale, or (3) where he gets such notice *dehors* the deed record. In all such cases the purchaser buys subject to the outstanding title; and actual notice that the defendant in the tax suit (through the apparent record owner) is not the real owner, is the same as would be a recorded deed from him to the true owner. [Following Stuart v. Ramsey, 196 Mo. l. c. 415.]

8. **TAX DEED: Notice of Recitals: That Apparent Record Owner is Not Actual Owner.** Every recital of a fact affecting the title contained in his deed is presumed to be known by the

purchaser at the tax sale, and he is affected with notice thereof in the same manner and to the same extent as though he had actual knowledge. For instance, if his deed purports to convey the interest of a certain person named as a defendant in the tax suit, he is charged with notice that by an unrecorded deed the title has passed to that person, and he takes subject to that deed, and if the deed is recorded and such person was dead at the time the tax suit was brought by publication, and his heirs or devisees were not made parties, he takes nothing. .

9. ———: ———: ———: Recitals in Judgment and Other Records. The consolidated tax book in the column headed "owner," named the entryman, the patentee, defendant's mother and "her heirs" as owners of the land; and the suit for taxes, brought by publication, names those three as defendants, but did not name her heirs. At that time the defendant's mother or her heirs had paid the taxes for fourteen years preceding the last delinquent year and the county records showed a chain of title from the patentee to defendant's mother, but showed no record of the patent, but the tract book, duly certified and on file, showed the land duly entered by the entryman, who had assigned to the patentee and was personally served and made default. The petition alleged . the entryman, the patentee and defendant's mother were the owners of the land, and the judgment recited that the allegations of the petition were found to be true. *Held*, that, assuming for the purposes of the case (though not allowing) that the entryman was the apparent record owner, the judgment found that defendants' mother was the owner, and similar recitals to those allegations in the execution, advertisement and purchaser's deed, were of the same legal intendment, and all amounted to a notice to the purchaser that she was the owner and she being dead when the suit was brought the purchaser took nothing. [Following Adams v. Gossom, 228 Mo. l. c. 582 et seq., and overruling so much of Wilcox v. Phillips, 199 Mo. 288, as conflicts with the decision.]

10. ———: Township Organization: Unconstitutional Law: Collateral Attack. The tax deed being held to be void on other grounds, such deep-going questions as whether the tax deed was void for that the law creating township organization, in pursuance to which the suit was brought and the judgment for taxes was rendered, was, after the suit was brought, declared unconstitutional, and whether the judgment for taxes was *res adjudicata*, and whether the attack thereon is collateral, are not decided, since their decision is not necessary, and such far-reaching questions should be decided only in a case where they are decisive.

11. ———: Equitable Interference: Removing Void Tax Deed. Even though the tax deed and judgment be void on their face, a second count in the petition to remove the deed as a cloud on the title, the other count being in ejectment, will be allowed.

12. ———: Constructive Notice: Recorded Deed to Stranger. Purchasers of land and landowners are not obliged to take constructive notice of the record of deeds by strangers to their title conveying the land to other strangers to their title. But that is of no consequence where the recitals in the purchaser's deed impart notice to him.

13. ———: Allowance for Taxes Paid and Rents. Purchasers at a void tax ·sale are to be allowed for taxes paid by them since their purchase, and they are also chargeable for rents if in possession under their deed.

Appeal from Putnam Circuit Court.—*Hon. George W. Wanamaker*, Judge.

REVERSED AND REMANDED (*with directions*).

*D. M. Wilson, J. W. Clapp, A. W. Mullins* and *G. W. Haverfield* for appellants.

(1) Where by inadvertence principles of law have been incorrectly declared on the first appeal, or where later decisions have otherwise and correctly declared the law, this court will re-examine and correct its errors on the second appeal in the same case. Mangold v. Bacon, 237 Mo. 496; Timber Co. v. Railroad, 242 Mo. 11. (2) This court will review its own decisions on second appeal, where no hardship would result to innocent parties. The appellate courts are always open, even upon the second appeal, for the correction of errors and the administration of justice. Hamilton v. Marks, 63 Mo. 167; Bird v. Sellers, 122 Mo. 23; Rutledge v. Railroad, 123 Mo. 131; Wilson v. Beckwith, 140 Mo. 369; Baker v. Railroad, 147 Mo. 152; Bealey v. Smith, 158 Mo. 522; Williams v. Butterfield, 214 Mo. 429; Bank v. Douglass Co., 146 Mo. 53. (3) The mandate of this court directing that further proceedings be

held in this case in accordance with the opinion delivered, did not change in any way the usual course of proceeding in the case as to any new matters introduced into the record. Sheppard v. Wagner, 240 Mo. 409; McMurray v. Railroad, 161 Mo. App. 140. (4) The facts being essentially different from those on the former appeal, this court will not be bound by its former opinion. Crispen v. Hannovan, 86 Mo. 168; Fuchs v. St. Louis, 167 Mo. 653; May v. Crawford, 150 Mo. 525; Grumley v. Webb, 48 Mo. 562. (5) The Township Organization Law of 1879 (Laws 1879, p. 218) included in the Revisions of 1879 (R. S. 1879, ch. 162), 1889 (R. S. 1889, ch. 162), and 1899 (R. S. 1899, ch. 168), was unconstitutional. State ex rel. v. Gibson, 195 Mo. 251. (6) An act adjudged unconstitutional is as if it had never been. Rights cannot be built up under it and it constitutes a protection to no one who has acted under it. Cooley's Constitutional Limitations (5 Ed.), p. 224. (7) The township assessor who assessed this land, was wholly without authority to make the assessment and his assessment was null and void. A valid assessment is an essential prerequisite to the lawful exercise of the power of taxation. It is a necessary condition of an effectual transfer of the title. Abbott v. Lindenbower, 42 Mo. 168; State ex rel. v. Railroad, 114 Mo. 1. (8) Where it affirmatively appears from the recitals in a tax deed that no judgment was rendered against the land sold for taxes and intended to be conveyed by it, the deed is void. Guffey v. O'Reiley, 88 Mo. 418. (9) A patent from the United States for land need not be delivered nor recorded. It must be recorded in the General Land Office at Washington before it is issued, and when issued the grantee is invested with the title. Our statute in regard to conveyances does not apply to patents; and their effect as vesting title and affording notice is not dependent upon their being recorded. 2 Jones on Real Property, secs. 1377, 1378; Sec. 2809, R. S. 1909; Mosher v. Ba-

con, 229 Mo. 338; Patterson v. Langston, 69 Miss. 400. (10) The record in this case shows that the Wilcoxes and their grantors had been in the constructive possession of the land since 1864, a period of over thirty-five years, with their deeds recorded, and that for fourteen consecutive years, from 1882 to 1895, inclusive, the taxes had been paid on the land by Mrs. Wilcox, after her death (1884) by her husband, and after his death (1889) by her heirs. The collector had therefore knowledge from his own and the county records that the Wilcoxes were claiming to be and were the actual owners of the land, and the records in the recorder's office showed Mrs. Wilcox to be the apparent owner. Zweigart v. Reed, 221 Mo. 33; Evans v. Robberson, 92 Mo. 200; Watt v. Donnell, 80 Mo. 195; Moore v. Woodruff, 146 Mo. 597; St. Joseph v. Baker, 86 Mo. App. 310; Evarts v. Lumber Co., 193 Mo. 433; Stuart v. Ramsey, 196 Mo. 415; Sensenderfer v. Kemp, 83 Mo. 588; Swisher v. Sensenderfer, 84 Mo. 104; Life Ins. Co. v. Smith, 117 Mo. 292; Feller v. Lee, 225 Mo. 319; Rothenberger v. Garrett, 224 Mo. 191. (11) The record further shows that the collector knew from the consolidated back tax book in his office, and the notations therein in red ink under the heading "Name of Owner," that Abbie D. Wilcox or her heirs were the last record owners of the land and knowing this before suit was brought, brought his suit accordingly. The facts in this record are entirely different from those in Payne v. Lott, 90 Mo. 676; Nolan v. Taylor, 131 Mo. 224, and Vance v. Carrigan, 78 Mo. 94. (12) Tax suits must be brought against the owner of the property and the collector in bringing the suit and the purchaser at the tax sale are bound to take notice of the record of deeds; and one who buys at such sale in a tax suit against one not the record owner gets only the title of the defendant in the suit. Allen v. Ray, 96 Mo. 542; Evans v. Robberson, 92 Mo. 192.

*N. A. Franklin, John W. Bingham, Calfee &* *Painter* and *Campbell & Ellison* for respondents.

(1)   All questions that were, or might have been raised in the former trial of this case, were, for the purpose of former adjudication, determined and passed upon, by the judgment of this court at the former hearing.   See Wilcox v. Phillips, 199 Mo. 288; Donnell v. Wright, 147 Mo. 639; Spratt v. Early, 199 Mo. 491; Emmert v. Aldridge, 231 Mo. 124; Cantwell v. Johnson, 236 Mo. 575; Mangold v. Bacon, 237 Mo. 496.   (2) Where, after an appeal a cause is reversed and remanded to the court below, with special directions, that court must do what the appellate court directs, and nothing more.   Atkinson v. Dixon, 70 Mo. 381; State ex rel. v. Givan, 75 Mo. 516; Chateau v. Allen, 74 Mo. 56; Bridge Co. v. Stone, 194 Mo. 175.   (3) The law of a case as declared on appeal becomes the law of the case on a second trial, especially where in the former appeal, the judgment was reversed with special directions.   State ex rel. v. Edwards, 144 Mo. 467; Rees v. McDaniel, 131 Mo. 681; Railroad v. Bridge Co., 215 Mo. 286.   (4) Wm. H. Brownlee was the record and apparent owner and the proper party defendant in the tax suit.   Wilcox v. Phillips, 199 Mo. 288; Vance v. Corrigan, 78 Mo. 94; Watt v. Donnell, 80 Mo. 195; Payne v. Lott, 90 Mo. 676; Allen v. Ray, 96 Mo. 542; Nolan v. Taylor, 131 Mo. 224.   (5) The deeds from Montgomery to Martin, Martin to Bradbury and Bradbury to Wilcox were outside the chain of title and of themselves no notice of title in any one.   Parties are not chargeable with the notice of the record of deeds outside the chain of title.   Williams v. Butterfield, 214 Mo. 425; Tidings v. Pitcher, 82 Mo. 379; Becker v. Strother, 167 Mo. 306; Bank v. Bank, 171 Mo. 327; Dingman v. McCollum, 47 Mo. 372; Cross v. Watt, 206 Mo. 394; Crockett v. Maguire, 10 Mo. 34; 16 Am. & Eng. Ency. Law (1 Ed.), p. 800.   (6) A judgment

obtained under a statute which is afterwards declared unconstitutional is valid until reversed, and cannot be impeached collaterally. 23 Cyc. 1071, note 43; Buckmaster v. Carlin, 4 Ill. 104; Cassel v. Scott, 17 Ind. 514. (7) It is not permissible to show in any collateral proceeding that the assessment on which the taxes were based was illegal and void, or that the statute or ordinance authorizing the assessment was unconstitutional or invalid. Mayo v. Foley, 40 Cal. 281; Mayo v. Ah-Loy, 32 Cal. 477. (8) A judgment obtained under a law which had been virtually repealed by a treaty, declaring that no further proceedings should be taken under such law, still it can not be avoided in a trial of title of lands claimed under such judgment. McNeil v. Knight, 4 Mass. 282. (9) The jurisdiction of the circuit court in an action for delinquent taxes is founded on the Constitution and laws of the State, and its judgment therein cannot be impeached in a collateral suit by showing that no assessment was made against the land for the years for which the taxes were adjudged delinquent; also the assessment books, papers and records in the office of the county clerk are inadmissible in a collateral proceeding to show the invalidity of the sale of land for taxes. Gibbs v. Southern, 116 Mo. 204; Evarts v. Lumber & Mining Co., 193 Mo. 444; Dorrance v. Dorrance, 242 Mo. 666. (10) The circuit court having general jurisdiction, therefore, it had jurisdiction of the subject-matter in this case. Livingston v. Allen, 83 Mo. App. 294; Hadley v. Bernero, 103 Mo. App. 549; Leonard v. Sparks, 117 Mo. 103. (11) A judgment for taxes, if brought against the right parties, is conclusive of all questions as to the amount of taxes due, the regularity of the assessment, the certificate of the collector, and is not open to attack in a collateral proceeding. Railroad v. View, 156 Mo. 608; Holt County v. Cannon, 114 Mo. 514. (12) Brownlee was the proper and only necessary party defendant in the tax suit. He was personally served and

had his day in court. If the party bringing the suit for taxes had no authority to do so, this fact cannot be shown in a collateral attack. Brownlee, the defendant in the tax suit, had an opportunity to be heard, but sinned away his day of grace. Rankin v. Real Estate Co., 199 Mo. 345; Kansas City to use v. Youmans, 213 Mo. 175; Robinson v. Levy, 217 Mo. 498; Mangold v. Bacon, 229 Mo. 473. (3) Appellants in their equity count alleges that respondents' tax deed is void on its face, and in the next breath ask to have it declared a cloud on their title. If it is void on its face it is certainly no cloud; and further if it is void on its face, that fact could have been shown on the first trial. (14) Conceding, which we do not, that appellants have the right to ask the court to consider the equity count at this time, they certainly ought to have offered to do equity, by a tender of the taxes paid by respondents. Meriwether v. Overly, 228 Mo. 248.

LAMM, J.—Plaintiffs sued defendants, Phillips and Reed, in the Sullivan Circuit Court in 1902 in straight ejectment for 120 acres of land situate in that county, to-wit, the south half of northwest quarter, and the northeast quarter of the southwest quarter, section 3, township 63, range 18. Reed and Phillips held a warranty deed from Campbell and Campbell. The latter, on motion, were permitted to come in as codefendants, because in privity with Phillips and Reed as warrantors of their title, and filed answer, thereby making denials, but admitting the possession of Reed and Phillips. Reed and Phillips answered admitting possession and making a general denial of other averments.

Plaintiffs are the living (and descendants of deceased) sons and daughters of Abbie D. Wilcox, who (they claim) died seised of the land.

Presently plaintiffs recovered and defendants appealed here. In 1906 that judgment was reversed (199

Mo. 288) and the cause was remanded for a new trial with directions hereinafter noticed. When the case went down, plaintiffs, without objection, filed an amended petition in two counts. The first count was in ejectment in conventional form, as was the original petition; the second count was a bill in equity to clear up their title. In the meantime (in 1906) Phillips and Reed had reconveyed to their codefendants, Campbell and Campbell, by quitclaiming the premises to them. (Note: They had paid a small sum down and had given a note and deed of trust to secure the balance of the purchase price, which note was surrendered to them by Campbell and Campbell, the latter repaying to Phillips and Reed their outlays. We find no answer filed by Phillips and Reed to plaintiffs amended petition.) The issues were apparently made up by Campbell and Campbell filing an answer to the amended petition, and plaintiffs replying thereto. This answer admits possession in Campbell and Campbell and they assume the burden of the defense, Phillips and Reed apparently dropping out. The cause came on for its new hearing in the Putnam Circuit Court on change of venue granted on the Campbells' application. Presently on such hearing the court found for defendants on both counts and from a judgment following in defendants' favor plaintiffs in turn appeal.

Briefly in outline the case is this: Charles Jones was a private in Captain Alsberry's company, Kentucky militia, in the War of 1812. That company was in the military services of the United States in that war. Jones duly received a military land warrant entitling him to locate 120 acres of land as bounty land for his services as such soldier. Thereupon Jones transferred his warrant to William H. Brownlee. Thereupon Brownlee, in the proper local land office, located the warrant upon the land in suit, and in turn received a due official certificate of such location, which

he duly assigned to one James Montgomery. By virtue of such warrant, such assignment of the warrant, such location of the warrant upon the land in dispute, such certificate of location, and such assignment of such certificate (and on due showing made of all such facts), James Buchanan on the 16th day of June, 1860, acting for the Government of the United States, as President, duly issued a patent to that Montgomery for said lands, and said patent was at once duly recorded as required by United States statute in Vol. 215, p. 286, in the office of the Recorder of the General Land Office at Washington, D. C. This patent was not recorded in the office of the recorder of deeds of Sullivan county until forty-two years passed, to-wit, on the 2nd day of August, 1902.

At the time the presently mentioned tax suit was brought, the records of Sullivan county showed as follows: (1) A tract book, duly certified by the proper local land office register, duly on file, showing the land entered by W. H. Brownlee as entryman in 1857; (2) the consolidated back tax book showing in a column headed "owner" that W. H. Brownlee, James Montgomery, Abbie D. Wilcox or "her heirs" were owners; (3) and the deed records showing a chain of title by duly recorded deeds beginning with James Montgomery and ending with a deed to Abbie D. Wilcox.

Plaintiffs claim under said patent and said mesne conveyance duly recorded.

Defendants claim under a tax suit in the Sullivan Circuit Court (against said Brownlee, said Montgomery and said Abbie D. Wilcox, she, as said, being plaintiffs' ancestor)—such suit ripening into a judgment in April, 1900, followed by a special execution thereon, a levy, a sale made in October, 1900, and a sheriff's deed to defendants, Campbell and Campbell, purchasers.

There was no service in the tax suit on James Montgomery, patentee, but W. H. Brownlee, entryman,

was personally served and made no defense. As to Abbie D. Wilcox, she was ostensibly served by an order of publication, but in fact had died in 1884. Her husband, William, died in 1889. None of plaintiffs were parties to that suit. The delinquent taxes merged in the tax judgment were assessed and levied for the years 1895, '96, '97 and '98. The judgment, as said, was rendered in 1900. Abbie D. Wilcox during her life, subsequently William, her husband, during his, and plaintiffs on the death of both, paid the taxes to the proper tax officers (presumably by correspondence) for the years 1882, 1883, 1884, 1885, 1886, 1887, 1888, 1889, 1890, 1891, 1892, 1893 and 1894.

Questions raised, to be disposed of understandingly, will require more particularity in statement of facts and pleadings; such particularity will be supplied in connection with a disposition of those questions in the course of the opinion.

So much for a general outline by way of statement. We will consider the case under two heads, to-wit, first, of a certain motion on which defendants place emphasis and, second, of the merits.

In our opinion the judgment was for the wrong party and stands to fall—this because:

I. *Of defendants' motion to dismiss the appeal (and herein of res adjudicata).*

At practically the same time of filing briefs, defendants filed a motion to dismiss the appeal on the ground of *res adjudicata* and briefed the point. In their brief proper the same question is raised. The point hinges on the fact that the judgment appealed from in the first appeal was reversed and the cause was remanded to the circuit court with the following directions: "To be proceeded with therein in accordance with this opinion." The contention is that the lower court had no authority under that form of re-

versal accompanied with such directions to permit an amended petition to be filed or to try the case over again, but was restricted to entering a judgment for defendants. Hence when it entered such judgment it was in conformity with the authority of our mandate on the first appeal and no second appeal lies.

If the premises were correct the conclusion contended for might follow, but the premises are not correct. In the first place, the general doctrines of this court on what questions are open on a second appeal in the same case have been so lately announced on a review of our cases in Mangold v. Bacon, 237 Mo. l. c. 512 et seq., as to need no extended exposition. Prying minds may consult that case and the authorities there noticed and canvassed. There is no pronouncement there made standing as an insurmountable obstacle in the road of considering the merits of this case on a second appeal. So late is that case and so full is its discussion that we decline to restate its doctrines or consider them anew.

In the next place, in this case there are important questions not determined in the former appeal, and, observe, the pleadings without objection were amended, raising issues on which such questions depend. For instance, for the first time do plaintiffs ask equitable relief on divers equitable grounds.

Moreover, if by inadvertence of counsel (or our own) the former appeal broke on a proposition, which, when illuminated by new discussion, new briefs and fuller and maturer consideration, we deem to need modification, then, the authorities cited in the Mangold-Bacon case abundantly point to our duty and authority to make the modification *ex debito justitiae;* for, as said in the Mangold-Bacon case, "An appellate court is a court for the correction of errors—its own as well as others. In correcting the errors of lower courts we do not proceed on the theory we make none of our own."

Nor, closer home, is there anything in the phrase employed by us in remanding this case when here before, to-wit, "to be proceeded with therein in accordance with this opinion," which forecloses the right to amend, to raise new issues and to have the case on a second appeal determined on a record presented by such second appeal. In Sheppard v. Wagner, 240 Mo. l. c. 442 et seq., we held in judgment a motion for a rehearing in which the point was made that the language in the opinion handed down amounted to a foreclosure of all possible questions and to a direction to enter judgment, which language follows, to-wit: "Judgment reversed and cause remanded to be proceeded with according to the views in this opinion expressed." Observe, that language is of the same import as that now held in judgment. In overruling that motion our Brother GRAVES, speaking for us all, construed that language against the views of movent, saying, *inter alia*:

". . . When we remanded the case for new trial we had in view the fact that the answer might be made more specific. . . . This was one among several things which prompted a remanding of the cause. Our judgment was not a remanding of the cause with directions to enter any specific judgment, nor to proceed in any particular way. . . . If the defendant Ella Wagner can show her right to this property through another valid agreement and transaction, the case is still open for that purpose."

In remanding the case, after reversing the judgment, we might have foreclosed the right of amendment, we might have entered judgment ourselves or (what would be the same in effect) have ordered the lower court to enter a specified one and end the litigation, but we did neither the one thing nor the other, and, under the doctrine of the Sheppard-Wagner case, the right to amend was open. Shall we now tread back

and make the new hearing on new issues and the new appeal mummery?

Furthermore (and as equally decisive), the point now up was not made below nor passed upon by the trial court. Defendants' learned counsel made no motion below for judgment because of our direction. Why not if they then thought as they think now? We think they must be taken, *secundum regulam,* as not so understanding the direction at that time, because they without a finger of protest lifted saw an amended petition filed, then they filed a new answer, then, as a first step in a new hearing on the merits, they cast an anchor to the windward by taking a change of venue on the theory the judge was prejudiced. Was the judge so prejudiced he would not be likely to obey our directions if he was asked to? That would be an astounding case of prejudice. Attend to defendants' affidavit for a change of venue. It recites that "the case stands for trial at this term of court" and that "petitioner has good reason to believe and does believe that defendants in the above cause cannot have a fair and impartial trial," etc. It thus appears that defendants expected and wanted a "trial," not a judgment as of course as if per our direction, as defendants now contend.

So the question is raised here on the heels of the hearing for the first time; hence it not only comes late as smacking of afterthought, but is in the teeth of trial theories and the rule of appellate practice in that regard.

At the hearing at our bar the motion to dismiss was taken with the case. The premises in mind, let it be overruled. With that ruling there falls out of the case the same question in defendants' principal brief.

II. *Of the merits.*

There are some subsidiary questions we set aside for the present, to be recurred to if deemed material.

For present purposes we assume that Abbie D. Wilcox died seised of the land, and that by descent cast the title inured to her husband, her living children and the descendants of those dead. When the life estate of her husband fell in by his death, the entire true title. and actual ownership inured to plaintiffs on the assumption made. Now they were not parties to the tax suit, instituted, say, fifteen years after their ancestor's death and one year after the death of Abbie's husband, hence they had no day in court in that case. Due process of law depends on service, *i. e.*, notice, and, absent notice, due process was not given them. As pointed out in Womach v. St. Joseph, 201 Mo. l. c. 482: " 'Due process of law' means law in the regular course of administration through the courts. [Jones v. Yore, 142 Mo. l. c. 44.] The term 'due process of law' is equivalent to the term 'the law of the land'—a term as old as Magna Charta. And, as said by Webster in a brief sparkling forever as a jewel in the crown of the American Bar in the Dartmouth College Case. (See 4 Wheat. l. c. 581), 'By the law of the land is most clearly intended the general law; a law, which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold his life, liberty, property and immunities, under the protection of the general rules which govern society.' [Barber Asphalt Co. v. Ridge, 169 Mo. l. c. 384.] 'In judicial proceedings,' says ANDREWS, J., in Bertholf v. O'Reilly, 74 N. Y. 509, 'due process of law requires notice, hearing and judgment. . . .' "

Defendants' proposition is, at bottom, that plaintiffs lose their land because of our taxation statutes and a certain admitted fact, to-wit, the non-recording of a United States patent in Sullivan county issued over half a century before to James Montgomery through whom and his vendees and subvendees they hold title—a patent duly recorded by the Government at the place appointed by United States statute. It will

be of interest to examine the reasons why that apparently astonishing result is said to follow.

(a) It is argued, in effect, that the record of Sullivan county at the time of the suit showed William H. Brownlee, the entryman, to be the apparent record owner, that there was personal service on him in the tax suit, hence the purchasers at the tax sale got a good title. This argument, we submit, proceeds on an entire fundamental misconception of law and of the facts of this record. It might be admitted that defendants acquired Brownlee's title; but does something come out of nothing? When they got his title did they get anything? Had he any title at all?

But defendants' contention connects itself with our laws relating to taxation and the bringing of tax suits for the purpose of coercing the payment of contributions imposed by government as a sovereign in order that the various functions of the State might not perish, and the question shifts itself and comes to be this: Is there anything in those laws or in our adjudications that passes the title of those true owners who had no day in court to a tax purchaser because of the fact that a half century ago the patentee through whom those owners hold neglected to record his patent in the county? That such question must be answered in the negative results, I think, from the following postulates:

(1) In the first place it would seem that to pass title or impart notice neither a patent from the United States nor a patent from the State. itself needs record in the county in which the land is situate. "A patent from the United States for land need not be delivered or recorded. Title by patent from the United States is title by record; and though it is usual to deliver a patent to the claimant, as in case of deeds, yet delivery of it is not necessary. 'The acts of Congress provide for the record of all patents for land in an office, and in books kept for that purpose. An officer called the

"recorder" is appointed to make and to keep these records. He is required to record every patent before it is issued; and to countersign the instrument to be delivered to the grantee. This, then, is the final record of the transaction—the legally prescribed act which completes what Blackstone calls "title by record,"— and when this is done the grantee is invested with that title. The statutes in regard to recording do not apply to conveyances by a State. Such conveyances may be recorded, and generally are, but their effect as vesting title and affording notice is not dependent upon their being recorded.'" [2 Jones, Real Prop., secs. 1377-1378; Mosher v. Bacon, 229 Mo. 1. c. 358 et seq.] The statutes of the State of Missouri, recognizing the fact that patents emanate from the General Government and evidence acts of that Government as overlord, do not require as a condition precedent to vesting title or imparting notice that such patents be recorded in the county in which the land is situate. It would be uncommonly revolutionary and singular if they assumed such hostile and unconstitutional attitude. To the contrary, our statutes are merely permissive and use the phrase "may be recorded." [R. S. 1909, sec. 10390.] Conveyances that *must* be recorded are mentioned in another section. [*Ibid.*, sec. 10381.] Why should taxing officers and tax purchasers not be charged with notice of United States grants by way of patents duly recorded where the law under which they are made requires a record? But, because of what follows, we need not pursue the subject or allow the case to ride off solely on such view, though that view might settle this case if followed to its logical conclusion; for, in that view of it, the record of Montgomery's patent in the proper office in Washington, D. C., imparted notice as a matter of law.

(2) In the second place it is a mistake to suppose that our taxing laws proceed on the theory that the landowner loses his land in any way or on any prin-

ciple differing from the way and principle on which landowners lose their land on general or special judgments followed by sheriffs' deeds. *Contra;* those ways and principles are precisely the same and all relate, in the particulars in hand, to the question of purchasing in good faith, that is, without notice. In other words, a tax purchaser stands in the shoes of any other purchaser at sheriffs' sales. If the other purchaser would get title, the tax purchaser gets one and not otherwise. Tax suits are required by the statute to be brought against the owner of the land. If that owner has kept his title off of record and if the suit is brought against the last apparent record owner and the purchaser buys without any notice of the fact that the apparent record owner has parted with his title to another, then, the true owner loses his land. Why? Because he neglected to record his deed and thereby impart notice of his title. If one of two stands to lose, the law puts the loss on the one whose neglect caused it. But we have never held that a *record* notice is the only method of imparting notice of an outstanding title. The doctrine of this court is that if the party relying on the lack of notice of land ownership in another at the time of his execution purchase has actual notice *dehors* the record, then a record notice to such party fills no office and becomes unnecessary. In Harrison Machine Works v. Bowers, 200 Mo. l. c. 231 et seq., our pertinent recording and tax statutes are considered. There seems to be such a widespread and mischievous notion abroad to the effect that there is something peculiar about tax sales and tax deeds taking them out of the generally recognized principles relating to notice of ownership in another that it may not be amiss to reproduce a part of what is there said:

"If an unrecorded deed from the apparent record owner of land to a bona-fide grantee be put of record after a judgment against such apparent record owner but before a sale under execution issued on that judg-

ment, the grantee in such deed will hold the land as against the purchaser at such sale; but it is not so if such deed be recorded after the execution sale. See, Davis v. Ownsby, 14 Mo. 170, and a long current of authority flowing from that leading case.

"Like reason makes like law. Hence, the foregoing proposition has been applied where an attachment was levied on land standing in the name of the defendant in the attachment suit. It has been held that if such defendant part with his title to a bona-fide purchaser by executing a deed, which such purchaser had failed to record before the levy of the attachment but which he records prior to a sale under the attachment proceedings, he would hold the land against the purchaser at such sheriff's sale. [Hannah v. Davis, 112 Mo. 1. c. 607; Hope v. Blair, 105 Mo. 1. c. 95.]

"The foregoing cases but promulgate the spirit and substance of the statutes of this State. For instance, section 923, Revised Statutes 1899, provides that 'every instrument in writing that conveys any real estate, or whereby any real estate may be affected, in law or equity, proved or acknowledged and certified in the manner hereinbefore prescribed, shall be recorded in the office of the recorder of the county in which such real estate is situated.' The next section is as follows: 'Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deeemd, in law and equity, to purchase with notice.' And the next section reads as follows: 'No such instrument in writing shall be valid, except between the parties thereto, *and such as have actual notice thereof,* until the same shall be deposited with the recorder for record.'

"The principles of law giving a sheriff's deed upon a tax judgment and sale precedence over an unre-

corded deed from the apparent record owner are but the principles announced in the foregoing statutes and the foregoing cases. The leading case on. the effect of a tax deed borrows and uses the same principles applicable to an unrecorded deed from the apparent record owner in cases arising on sheriff's sales on ordinary judgments. [Vance v. Corrigan, 78 Mo. 94.] And it has been held in a very late case (Stuart v. Ramsey, 196 Mo. 404), that if the execution purchaser under a tax sale had notice of an unrecorded deed, then, his title acquired at the tax sale was inferior to that of the grantee in such unrecorded deed. The same doctrine was recognized (*arguendo*) in Allen v. Ray, 96 Mo. 542.''

It is true in the Bowers case we were dealing with a case where the true owner put his hitherto unrecorded deed on record pending the tax suit, but we were also considering the registry acts in connection with the statutes relating to tax suits with the purpose of showing that the purchaser at a tax sale stands precisely in the position of an execution purchaser at any other sale, and that he gets no title where he has notice of an outstanding title in another (1) either by the record of the unrecorded deed during the pendency of the tax suit (2) or such record after judgment and before the tax sale, (3) or (which is close home) *where he gets such notice dehors the deed record*. The adjudicated cases are in accord on all the propositions just announced and the last proposition we will pursue further. The leading case of Vance v. Corrigan, 78 Mo. 94, recognizes it *arguendo*. Watt v. Donnell, 80 Mo. l. c. 198, recognizes it. Lucas v. Land & Cattle Co., 186 Mo. l. c. 456, recognizes it by necessary inference. Sugg v. Duncan, 238 Mo. 423, recognizes it similarly. Moore v. Woodruff, 146 Mo. l. c. 602, recognizes it similarly. All those cases (and many more might. be cited) lay down the general rule that if the tax suit is

brought against the person who appeared from the record to be owner the purchaser gets title, but mark the weighty exception, *viz.*: *"In the absence of notice of facts that such person is not the true owner."*

In Stuart v. Ramsey, 196 Mo. l. c. 415 et seq. (*q. v.*), is an extended discussion on the invalidity of a tax title arising from the fact the purchaser was informed before his purchase that another, the true owner, claimed the land and who was not a party to the suit. The proposition is there announced that the true owner does not lose his land under such circumstances and the grounds of such conclusion are satisfactorily put as resting on the general doctrine that he who takes a deed with actual notice of an outstanding deed carrying the title takes it subject to the outstanding title. In the Watt-Donnell case, supra, notice was imparted by actual possession in the party holding the outstanding title. In the Stuart-Ramsey case the tax purchaser was put upon inquiry by a verbal notice that the tax judgment defendant had parted with his title. In the latter case this court rigidly applied the doctrine of plenary notice from being put on inquiry by facts and circumstances. "It has often been decided by this court," said GANTT, J., in the Stuart-Ramsey case, "that if one has notice of the actual possession of land which another has, it will be notice to him of that other's title. [Masterson v. Railroad, 72 Mo. 342; Davis v. Briscoe, 81 Mo. 27; Freeman v. Moffitt, 119 Mo. 280; St. Joseph v. Baker, 86 Mo. App. 310; Wiggenhorn v. Daniels, 149 Mo. 160.] But these cases do not mean that actual notice of one's title may not be imparted otherwise than by actual possession of the land. Actual notice within the meaning of our law is used in contradistinction to the constructive notice imparted by the record of a conveyance. It does not mean direct evidence that the subsequent purchaser actually knew of the existence of the deed. Any proper evidence tending to show it, facts and circumstances com-

ing to his knowledge that would put a man of ordinary circumspection upon inquiry, will suffice. [Maupin v. Emmons, 47 Mo. 304.] As said by this court in Conn. Mutual Life Ins. Co. v. Smith, 117 Mo. l. c. 292: 'Courts of equity, since their earliest foundation, have always recognized that the still, small voice of suggestion, emanating as it will from contiguous facts and surrounding circumstances, pregnant with inference and provocative of inquiry, is as potent to impart notice as a Presidential proclamation or any army with banners.' In Sensenderfer v. Kemp, 83 Mo. l. c. 588, BLACK, J., speaking for the court said: 'Notice "is actual when the purchaser either knows of the existence of the adverse claim of title or is conscious of having the means of knowledge, although he may not use them." [Speck v. Riggin, 40 Mo. 405.]' [See, also, Swisher v. Sensenderfer, 84 Mo. 104.]''

In Zweigart v. Reed, 221 Mo. 33, the case was ruled on the doctrine of Stuart v. Ramsey, on facts slightly differing but equivalent in substance to those in the Stuart-Ramsey case. In the Zweigart-Reed case Reed bought from Dunnegan by quitclaim deed, who, in turn, was the purchaser at the tax sale, and therefore held subject to the equities between the true owner, the plaintiff, and Dunnegan and was cast because Dunnegan was put on inquiry and was charged with notice of the facts which such inquiry, reasonably pursued, would disclose. Assuming, therefore, without citing other authorities, that the rule is that where a purchaser at a tax sale has knowledge of facts and circumstances prompting an inquiry on the part of a reasonably prudent person and where such inquiry from the proper source would have disclosed the real owner of the land, then, the purchaser takes nothing by the tax deed because legal notice always follows facts sufficient to put a person on such inquiry, we come to the facts in the instant case.

(3) Undoubtedly those officers charged with the duty of collecting taxes in Sullivan county had notice of the fact that Abbie D. Wilcox or her heirs had been paying the taxes on this land for many years immediately prior to the years on which the tax delinquency arose. Evidently, too, they had some sort of notice of Montgomery's patent, or at least of his sometime claim. They knew, too, from the tract book that Brownlee was entryman. We say so much as that because in the consolidated back tax book in the column headed "owner" appeared a notation in the county clerk's hand-writing that Brownlee, Montgomery, Abbie D. Wilcox, "or her heirs" were owners. Armed with that information in that book the tax attorney omitted from his petition the heirs of Abbie D. Wilcox and made Brownlee, Montgomery and Abbie D. Wilcox parties defendant, alleging therein that they were the owners of the land. So, the judgment recited that the allegations of the petition were found to be true. Hence the court found and spread of record the fact that Abbie D. Wilcox was an owner. We so held on a similar state of facts in a late case. [Skillman v. Clardy, 256 Mo. 297.] So, the execution made a similar recital, the levy was on her interest, the advertisement of the sheriff's sale made a similar recital, and (to cap the climax) the very sheriff's deed under which Campbell and Campbell hold made recitals meaning in legal intendment that they purchased her interest in the land. In this state of the record all question of notice to the tax purchasers of Mrs. Wilcox's ownership is set at rest by an adjudication of this court in Adams v. Gossom, 228 Mo. l. c. 582 et seq. In the Adams-Gossom case, as in the instant case, the tax purchaser entered into possession under his sheriff's deed. In that case Adams was dead and here Mrs. Wilcox was dead. In that case, as in the instant case, the dead Adams was a party defendant brought in by publica-

tion together with a former record owner, one Stay, and we there said:

"*But in our case Gossom had notice of Adams's title and estate by the very proceedings under which he bought.* Adams was owner in fact. He was notified by publication as owner. He was sued as owner. The judgment proceeded against him as owner. The sheriff's notice of sale proclaimed to all purchasers that Adams's interest had been seized by an execution levy and was about to be .sold.    Gossom's bid was for Adams's interest and his sheriff's deed purported to convey it to him.  Gossom entered into possession under that deed and therefore held possession on the theory that he had acquired title from Adams.  Under such circumstances he could not be allowed to claim that he had no notice of Adams's title and claim.  He was plainly put on inquiry and must be held to know what such inquiry, reasonably and diligently pursued, would have resulted in finding out.  Under such circumstances knowledge is imputed to one who had the means of knowing at hand and the recitals of his title papers are somewhat in the nature of an estoppel upon him to deny Adams's title.  [Wade on Law of Notice (2 Ed.), secs. 308 and 309.]

"That law-writer sums up the general doctrine in this way: 'As a matter of fact a purchaser of real estate may be totally ignorant of the recitals in his own deed; yet every recital of a fact affecting the title to the premises, contained in such deed, will be presumed to be known to such purchaser, and he will be .affected with notice thereof in the same manner and to the same extent as though he had actual knowledge. Therefore it may be said that notice derived from the recitals of a deed to a purchaser is actual, though it clearly rests upon a presumption of law.  It may be called actual, however, in the same sense that a written notice delivered to a party who never reads it may be · called actual notice.'  . . .

"At worst Adams's title was on the foot of an unrecorded deed, and it is settled doctrine that a purchaser at a tax sale, who has notice of an unrecorded deed, takes subject to the rights of the grantee in such deed since he stands charged with the knowledge that the apparent record owner was not the real owner. [Stuart v. Ramsey, 196 Mo. l. c. 414-5; Harrison Machine Works v. Bowers, 200 Mo. l. c. 232 et seq.; Zweigart v. Reed, 221 Mo. l. c. 43 et seq.] It is sound to reason from similar to similar, for the precept is, concerning similars, the judgment is the same.

"We rule, then, that Gossom bought with notice of the title of Adams. As the tax judgment was void as to Adams and his heirs, the ruling just made means that the case was wrongly decided, *nisi.*"

The ruling in the Adams-Gossom case is precisely in point and, hence, conclusive in the instant case unless we are prepared to overrule it, and that we are not willing to do.

(b) As said, there are some subsidiary questions in the case:

(1) Plaintiffs complain in their second count, their bill in equity, of irregularities in defendants' sheriff's deed, a sale *in solido,* a reference to a sale of only the "last tract" mentioned (said last tract being only one quarter-quarter section) and so on. But it is evident the case has broken before those questions are reached. Hence they are reserved.

(2) The former township organization law under which the taxes in question were assessed and levied and under which the county treasurer was *ex officio* collector of back taxes and therefore brought the tax suit, was declared unconstitutional by this court In Banc in State ex rel. v. Gibson, 195 Mo. 251. The opinion in that case went down March 30, 1906. Plaintiffs in the second count of their petition also attack the tax deed and judgment as void because founded on an un-

constitutional law.    In turn defendants defend the judgment and deed.  They say the attack is collateral, that the tax judgment is *res adjudicata* and so on.. The extremely grave and deep-going. questions thus raised are not necessary to a decision of this case and are put to one side as reserved.   Their gravity and far-reaching consequences bespeak a ruling only in a case where they are decisive.

(3)   When the case at bar was ruled the first time (199. Mo. 288) it was on a unanimous opinion.   The first opinion in that case broke defendant's title on the theory that a mere entryman did not hold such title as made the land subject to taxation by the State and county.   A rehearing was granted on that ruling.   At the rehearing the chief attention of counsel and court was directed to that ruling and it was exploded.

Questions now emphasized by elaborate discussion by counsel were overlooked, or faintly pressed before, and we have come to the conclusion that if in the last (and printed) opinion on the former hearing any doctrines were announced differing inferentially or directly from those now announced, they should no longer be followed.

(4)   It is argued that if the tax deed and judgment be void on their faces for any of the reasons claimed by plaintiffs, then equity does not take jurisdiction. We will not develop the contention.   In Pocoke v. Peterson, 256 Mo. 501, the grounds of equitable interference in removing clouds on land titles are set forth (*q. v.*).    We consider them pertinent and controlling in the instant case.   The contention is, therefore, disallowed to defendants.

(5)   Complaints are made on all sides of a failure of proof in showing the identity of certain names with certain persons involved in the respective chains of title (Brownlee on one side, and a person named Leroy Martin, on the other), but we find such complaints lack substance.

(6)    Miserable, indeed, would be the condition of purchasers of land and landowners if they were obliged to take constructive notice of the record of deeds by strangers to their title, conveying the land to other strangers to that same title (2 Devlin on Real Estate Deeds [3 Ed.], sec. 712) ; hence defendants' counsel invoke the proposition that the Campbells had no notice of deeds outside the chain of title under which they hold, to-wit: a chain of two links—one, an entry by Brownlee, and the other a sheriff's conveyance of his title to them. But this view of it *assumes* that the record at Washington, by the Government, of the patent to Montgomery, carrying as it does recitals of a location by Brownlee of Jones's military land warrant, and of Brownlee's transfer of his certificate of such location, together with the record of deeds in Sullivan county, whereby the land was conveyed by Montgomery by mesne conveyances to plaintiffs' ancestor, are each and all ineffectual to impart notice to the Campbells. We have already dealt with that feature in this opinion, and shall add nothing more. The question need not be taken as decisive, for we have worked out notice to the Campbells through the very recitals of their own sheriff's deed under the ruling in the Adams-Gossom case, supra.

The premises all in mind, the judgment stands for reversal. Accordingly it is reversed, and the cause is remanded with specific directions to the trial court to take an accounting of rents, on one side, and taxes paid by defendants since their purchase, on the other, strike a balance between the two and give judgment thereon as the facts found may show. The trial court is further directed to find for plaintiffs on the first count for possession and order the judgment executed by a writ of ouster and execution for rents, if any be found due. The trial court is further directed to find for plaintiffs on the second count to the effect that the tax judgment and deed in question are invalid for lack of serv-

ice on plaintiffs, the true owners of the land, and that such judgment and deed be ordered cancelled and annulled for that reason.

*Debet esse finis litium.*

It is so ordered. *Woodson, P. J.,* and *Graves, J.,* concur; *Bond, J.,* concurs in paragraph II and in result.