WILLIAM R. TAFF et al. v. ROSCOE TALLMAN, Appellant.

Division Two, March 4, 1919.

1.  TAX SUIT: Sale Before Suit Brought: Title As Against Purchaser. Title to real estate does not pass as against the actual owner, who records his deed thereto after a tax suit is begun, but before judgment therein, by a sale for taxes under a judgment in such suit solely against the record owner of the land, who in good faith had sold and conveyed all his interest therein before the tax suit was begun.

2.  ———: ———: ———: Statute of 1909: Record Owner. The amendment of 1909 to Sec. 11498, R. S. 1909, declaring that the suit for taxes is to be brought against the owner of the land "if known, and if not known, then against the last owner of record," was merely declaratory of the existing law as frequently announced by the courts, and does not vest the title in purchasers at the tax sale under a judgment obtained solely against the record owner, who in good faith had sold the land before suit was brought by a deed which was recorded before judgment.

3.  ———: ———: ———: Lien: Foreclosure: Day in Court. The fact that by statute a lien for the payment of taxes is retained by the State upon all real estate has nothing to do with the right of the State to sell the interest of the actual owner, who bought in good faith before the suit against the record owner only was brought and recorded his deed before judgment.  Before the interest of the actual owner can be foreclosed he must have his

day in court, unless some compelling legal reason for failure to afford him such day exists; in other words, he is entitled to due process of law.

4. ———: Reimbursement of Plaintiffs. The Act of 1903 (Laws 1903, p. 254; Sec. 11508, R. S. 1909), providing for repayment of all taxes with interest thereon in case a sale of the land for taxes shall be declared invalid, applies, by force of its own terms, to defendants only; and since it is in derogation of the common law, it must be construed strictly, and will not authorize the court to give judgment for plaintiffs who bought at the illegal tax sale and bring suit to have the title determined and who in their replication ask that, if the sale be declared invalid, they may have judgment for all sums paid by them at the tax sale and in liquidation of taxes, and that such judgment be decreed a lien on the land.

5. STATUTE IN DEROGATION OF COMMON LAW: Application of ACT OF 1917. The Act of 1917, Laws 1917, p. 324, which in substance commands that all laws enacted by the Legislature which are in derogation of the common law shall be liberally construed, has no application to the Act of 1903 providing for a repayment of all taxes paid in case the tax sale be declared invalid. ·

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside*, Judge.

REVERSED AND REMANDED *(with directions)*.

*Harry Clymer* for appellant.

(1) The warranty deed from Wilson to defendant was executed on June 20, 1910, and filed and recorded on September 10, 1910. The tax suit against Wilson was filed on September 3, 1910, and the judgment in that suit was rendered on November 11, 1910, two months after the recording of the deed to Tallman. The sale, under which plaintiffs claim title, was on February 24, 1911, more than eight months after Wilson had parted with the title and more than five months after the deed from Wilson to Tallman had been filed and recorded. Hence no title passed by such sale and plaintiffs acquired no rights thereunder. Harrison Machine Works v. Bowers, 200 Mo. 219; Sugg v. Duncan, 238 Mo. 422; Wilcox v. Phillips, 260 Mo. 664;

Rehm v. Alber, 199 S. W. 173. Where a purchaser at a sale under a tax judgment has notice of the execution of a deed by the judgment debtor, his title acquired at such tax sale is invalid as against the grantee in that deed, even though the deed may not be recorded. Stuart v. Ramsey, 196 Mo. 404. After the recording of the deed, which was prior to the sale under the judgment for taxes, and prior to the rendition of the judgment for taxes, the purchasers at such subsequent sale must be held to have had notice of the deed, and would acquire no title as against the grantee in that deed. Sec. 2810, R. S. 1909; Harrison Machine Works v. Bowers, 200 Mo. 232; Sugg v. Duncan, 238 Mo. 422. In sales under judgments the sheriff sells only the right and title of the judgment debtor; and in this case the judgment debtor, having parted with his title by deed executed prior to the filing of the suit, and recorded prior to the rendition of the judgment and sale thereunder, the purchasers took nothing by the sheriff's deed to them. Davis v. Owenby, 14 Mo. 170; Hannah v. Davis, 112 Mo. 607; Sugg v. Duncan, 238 Mo. 426. (2) It is the settled law in this State that a deed supported by a valid consideration, not recorded at the time of judgment, but placed on record before the sale of the land under the judgment, takes precedence over the title acquired by the purchaser at the subsequent sale under the judgment. Dixon v. Dixon, 181 S. W. 86; Hannah v. Davis, 112 Mo. 607; Sugg v. Duncan, 238 Mo. 422. (3) Sec. 11498, R. S. 1909, affords the plaintiffs no relief, because that section as amended in 1909, and as it now exists, means just what the courts of this State have long construed it to mean prior to its amendment. Keaton v. Jorndt, 259 Mo. 195; Powell v. Greenstreet, 95 Mo. 1.

*A. H. Harrison* for respondents.

(1) The unpaid taxes constituted a lien on the land, and this lien was prior and paramount to all other liens.

It was created and disclosed by public records, and the appellant took his deed with notice of it, and he was bound to go further and see whether the delinquent taxes had been satisfied; had he done this at the date he filed his deed it would have disclosed the tax suit pending against the land to enforce the payment of the taxes. He therefore, took with notice of the suit that resulted in the sale and is bound thereby. Fleckenstein v. Baxter, 114 Mo. 496. (2) In absence of other information, the collector was entitled to fasten and foreclose the lien of the State upon the land by suing him who appeared from the records to be the true owner which was Wilson, who was the defendant in the tax suit. Keaton v. Jorndt, 259 Mo. 195. (3) The law in force at the time the tax suit was filed against Wilson, the defendant, required the collector to prosecute his action "against the owner of the property if known, and if not known, then against the last owner of record as shown by the city or county records at the time the suit was brought." Sec. 11498, R. S. 1909. (4) If one of two stands to lose, the law puts the loss on the one whose neglect caused it; in this case the respondents did all that they were required to do which was to ascertain that at the time the suit was filed, it was brought against the last owner of record as shown by the county records. When that tax suit was prosecuted to a final judgment and sale and the respondents purchased the land at the sale, they became the owners and appellant lost all his title in the land. "One holding an unrecorded instrument affecting the title to the land should not be allowed to defeat the objects of the law and obstruct the collection of the revenue by filing it for record before judgment or sale." Hilton v. Smith, 134 Mo. 508; Schnitger v. Rankin, 192 Mo. 35; Land & Lumber Co. v. Bippus, 200 Mo. 697; Wengler v. McComb, 188 S. W. 76; Allen v. Ray, 96 Mo. 546; Cowell v. Gray, 85 Mo. 169; State ex rel. Hunt v. Sack, 79 Mo. 661.

FARIS, J.—This is an action to determine interest in a certain forty-acre tract of land situate in Crawford County. Upon the trial of the case before the court, plaintiffs had judgment and defendant has, by the usual procedure, appealed.

The facts of the case, in so far as these facts are necessary to an understanding of the legal question which we find it nceessary to discuss, are few and simple and run substantially thus: One Otis S. Wilson, who is conceded by both parties to be the common source of title, was on and prior to the 20th day of June, 1910, the owner of the land in controversy. On the date last above mentioned, said Wilson, in good faith (so far as the record before us discloses), sold and conveyed to the defendant herein all of his right, title and interest in the land in dispute.

Thereafter, and on the 3rd day of September, 1910, plaintiff, William R. Taff, as Collector of the Revenue of Crawford County, filed a suit against said Otis S. Wilson to foreclose the lien of the State of Missouri for delinquent taxes on the land in controversy. Personal service was had in that action on said Wilson, who, as forecast, was the apparent owner of said land so far as the records in the recorder's office disclosed the ownership thereof. This service was had on the 8th day of September, 1910. Two days after such personal service in the tax suit was had on Wilson, and seven days after the tax suit was filed, that is to say, on the 10th day of September, 1910, defendant filed his deed of conveyance for record and it was duly recorded. Thereafter, and on the 10th day of November, 1910, judgment by default was had *solely* against Otis S. Wilson. In due course, an execution was issued and the land was sold under said judgment and purchased jointly by plaintiff William R. Taff, who, as stated above, was as Collector of the Revenue of Crawford County, the plaintiff in the tax suit, A. H. Harrison and Levi Hopkins, all three of whom are

277 Mo.—11

plaintiffs in this case. Plaintiff Harrison was at the time of his purchase of the land at the tax sale the tax attorney for Crawford County, and said Hopkins was the publisher of the newspaper in which was published the notice of the sheriff's sale thereof.

In order to determine interest plaintiffs brought the suit at bar and in due course a trial was had before the court. No instructions seem to have been asked, or given by the court for either side. The only matter of evidence which it is necessary to state, and this fact, conclusively shown at the trial, was not disputed, is that neither the plaintiff Harrison nor the plaintiff Hopkins actually knew that defendant was the real owner of the land in dispute at the time they purchased the land at the sheriff's sale for taxes; though at the time of such sale, as stated above, defendant's deed of conveyance to said land was actually on record, affording constructive notice of defendant's sole ownership. But both Harrison and Hopkins testified that they did not examine the records of deeds after the tax suit was filed. Plaintiff Taff did not testify in the case at all. These facts will, we think, be sufficient to make clear the one decisive point which we are required to discuss.

I.    There is but one controlling question before us. That single question is: Does the title to real estate pass as against the actual owner thereof, who records his deed thereto after a tax suit **Sale Before Suit.** is begun, but before judgment therein, by a sale for taxes on a judgment in such suit solely against the record owner of the land, who in good faith had sold and conveyed all his title therein before the tax suit was begun?

As we gather the position of plaintiffs, they seem to concede that under the decided cases in this State which were bottomed on the law as it existed before the amendment of Section 11498, Revised Statutes 1909,

Statute in 1909 (Laws 1909, p. 722), the title would
of 1909. not have passed, and they could not have re-
covered. [Sugg v. Duncan, 238 Mo. 422; Har-
rison Machine Works v. Bowers, 200 Mo. 219; Stuart
v. Ramsay, 196 Mo. 404.] But plaintiffs urge that the
changes made in Section 9303, Revised Statutes 1899,
by interpolating therein by the amendment supra the
words *"if known, and if not known, then against the
last owner of record, as shown by the county, or city
records at the time the suit was brought"* (Laws 1909,
p. 722; Sec. 11498, R. S. 1909), have had the effect to ·
change the rule announced in Sugg v. Duncan, supra,
and other cases. Bare reference to the statute in force
when the tax suit was begun and the fact arose upon
which the case of Sugg v. Duncan was ruled, discloses
that it then read: "All actions commenced under the
provisions of this chapter shall be prosecuted in the
name of the State of Missouri. at the relation and to
the use of the collector, and against the owner of the
property." [Sec. 9303, R. S. 1899.] So plaintiffs con-
tend that by adding, in 1909, to the above clause the
provision that *if the actual owner were not known,* then
the action lay *against him who by the county records
appeared to be the owner,* the Legislature intended that
the title of the actual owner should be divested by an
execution sale under a judgment against one who though
shown by the records to be such, was not in fact the
actual owner of the lands when the action was begun.
The ruled cases disclose, however, that this court had
uniformly held that the statute, *even before it was
ever amended in 1909,* required that the suit for taxes
should be brought against the actual owner if known,
and if not known, then against him who by the records
of land titles in the county appeared to be the owner of
the land. [Hilton v. Smith, 134 Mo. l. c. 509; Schnitger
v. Rankin, 192 Mo. 35; Land & Lumber Co. v. Bippus,
200 Mo. 688; Allen v. McCabe, 93 Mo. 144; Vance v.
Corrigan, 78 Mo. 94; State ex rel. Hunt v. Sack, 79
Mo. l. c. 663; Cowell v. Gray, 85 Mo. l. c. 172; Keaton

v. Jorndt, 259 Mo. l. c. 195; Rothenberger v. Garrett, 224 Mo. 191.] In short, the amendment of 1909 was merely declaratory of the existing law upon this point. Therefore, this amendment performed no office toward changing the law. It only changed *lex non scripta* into *lex scripta.*

It follows, therefore, that if before the amendment of 1909, the actual owner of the land, who was not sued for taxes, did not lose his title by a sale, upon a judgment against the record owner, made after the recording of the conveyance to such actual owner (Sugg v. Duncan, supra; Wilcox v. Phillips, 260 Mo. 664; Harrison Machine Works v. Bowers, 200 Mo. 219), then such actual owner—no change having been made in the meaning of the law by the amendment—ought not under similar circumstances to lose his land now. Expressions and disconnected *dicta* are to be found in the ruled cases which on first blush seem to point to a different view. [See, Schnitger v. Rankin, 192 Mo. 35; Vance v. Corrigan, 78 Mo. 94; Weir v. Lumber Co., 186 Mo. 388; Hilton v. Smith, 134 Mo. l. c. 508; Wood v. Smith, 193 Mo. 484; Payne v. Lott, 90 Mo. 676; Evans v. Robberson, 92 Mo. 192; Keaton v. Jorndt, 259 Mo. l. c. 195.] But what is said in all of these cases, as well as in others which are to be found in the books, must be construed in the light of the precise facts therein up for judgment. So construed, each of these cases is entirely in accord with the view we are here taking. Certain obscure language in Wood v. Smith, 193 Mo. l. c. 489, due clearly to a clerical error, might lead to a different view, but such a view will not bear the light thrown on the point by reason or analogy, or by the great weight of authority in this State. Moreover, all the cases last above, save one (Keaton v. Jorndt, supra, which in no wise conflicts therewith), were decided by us long before the cases of Sugg v. Duncan, supra, Wilcox v. Phillips, supra, and Harrison v. Bowers, supra, were ever ruled.

But it is urged that the cases (Sugg v. Duncan, supra; Wilcox v. Phillips, supra; Harrison v. Bowers, supra) which hold that the recording of 'the deed to the actual owner of the land *before a sale under a judgment against the record* owner prevented the passing of the actual owner's title by such sale, left out of view

Lien.

the fact that by statute (Sec. 11339, R. S. 1909) a lien is retained by the State upon all real estate for the payment of all taxes. Obviously, this lien has nothing to do with the case. The question is one wholly of notice and therefore of due process of law. There is nothing strange, or weird, or peculiar in an action to foreclose this lien of the State for taxes. [Wilcox v. Phillips, supra.] Before it can be foreclosed the actual owner of the land must have his day in court, unless some compelling legal reason for failure to afford him such day exists. And other view would offend against the requirement that if the land is to be taken from the true owner such taking must be by due process of law. The apparent, or record owner, is free to sell and convey his land in good faith to any one who sees fit to buy at any moment the record owner sees fit to sell. But no such sale and conveyance will avoid the lien for taxes declared by statute, which lien follows all mutations of title and ownership till the lien is dissolved by foreclosure, or expires by statutory limitation. Since it is nothing but a lien, extraordinary only in that it is superior to all others, and without any mysterious properties or adjuncts, it must be foreclosed in ways and by process similar to the legal ways and process by which other liens are foreclosed by actions at law, or in equity according as the remedy may sound. That a sale bottomed on an action and judgment against the apparent or record owner, absent fraud or collusion and absent knowledge in the collector when he sues and in the purchaser of the land when he buys, as to who is the true owner, will pass the title of the true owner holding title by an instrument not of record when the sale for taxes is had, is

wholly settled in this State. But this has not been so ruled on account of the existence of the lien of the State against the land for taxes, or from the operation of any other mysterious legal fetish, but such sales are, among other reasons, perhaps, held good upon the ancient rule that where one of two persons must suffer loss, he will be required to suffer whose default is the greater. Clearly, being liable by statute for the payment of taxes, which he neglects to pay, the actual owner whose title is evidenced *by a deed unrecorded till after sale and purchase by an innocent purchaser,* is guilty of the gravest default and suffers by losing his land. Therefore, since there has been no change in the law since the cases of Sugg v. Duncan, supra, and Wilcox v. Phillips, supra, were ruled, we are constrained to follow those cases. As so ably and clearly pointed out in Wilcox v. Phillips, supra, this rule has prevailed in this State ever since the case of Davis v. Ownsby, 14 Mo. 170, was decided.

II. Upon the coming in of defendant's answer, plaintiffs, in their replication, prayed that in the event the court should rule that the tax sale by virtue of which they claim title, is invalid, they should have judgment for all sums paid by them for purchase price and taxes upon the land, and that the sum of such payments be decreed to be a lien upon the land. By this prayer, it will be seen, plaintiffs invoked the application in their favor of the provisions of the act of 1903. [Laws 1903, p. 254; Sec. 11508, R. S. 1909.]

It has been held by this court that the act providing for the repayment of all taxes with interest thereon, in case a tax sale shall be declared invalid, applies perforce the terms of the statute itself to the defendant only, and since the act invoked (Sec. 11508, supra) is in derogation of the common law it must be strictly construed. [Manwaring v. Lumber & Mining Co., 200 Mo. l. c. 731.] While mindful of the provisions of the Act of March 9, 1917 (Laws 1917, p. 324), which

St. Louis v. Querl Lumber Co.

in substance commands that all laws enacted by the Legislature of this State which are in derogation of the common law shall be liberally construed, we are of the opinion that the above act has no application to the construction of the Act of 1903, supra. The Manwaring case is in every respect decisive of the point urged by plaintiffs, and we are constrained to follow it.

It results that this case ought to be reversed and remanded with directions to the trial court to adjudge the title to the land in controversy to be in defendant and that plaintiffs have no title, interest or estate therein. Let it be so ordered. All concur.